*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0306p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

CLEVELAND HOUSING RENEWAL PROJECT,
　　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

DEUTSCHE BANK TRUST COMPANY;
DEUTSCHE BANK NATIONAL TRUST
COMPANY; DEUTSCHE FARGO BANK
NATIONAL TRUST COMPANY; DEUTSCHE
BANK TRUST COMPANY AMERICAS, fka
Bankers Trust Company,
　　　　　　　　　*Defendants-Appellants,*

CITY OF CLEVELAND,
　　　　　　　　　*Defendant.*

Nos. 09-3571/3648

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 08-03003—James S. Gwin, District Judge.

Argued:　April 30, 2010

Decided and Filed:　September 20, 2010

Before:　COOK and McKEAGUE, Circuit Judges; HOOD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Allyson N. Ho, MORGAN, LEWIS & BOCKIUS LLP, Houston, Texas, for Appellants.  Thomas C. Wagner, VAN DEUSEN & WAGNER, LLC, Cleveland, Ohio, for Appellee.  **ON BRIEF:** Allyson N. Ho, MORGAN, LEWIS & BOCKIUS LLP, Houston, Texas, Jami Wintz McKeon, Elizabeth A. Frohlich, MORGAN, LEWIS & BOCKIUS LLP, San Francisco, California, Hugh E. McKay, PORTER, WRIGHT, MORRIS & ARTHUR LLP, Cleveland, Ohio, for Appellants.  Thomas C. Wagner, Roger W. Van Deusen, VAN DEUSEN & WAGNER, LLC, Cleveland, Ohio, for Appellee.

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

—————————————

**OPINION**

—————————————

McKEAGUE, Circuit Judge.  This is a public nuisance action brought against Deutsche Bank Trust Company and affiliated companies ("Deutsche Bank"), in relation to twenty-five vacant properties in and around Cleveland owned by Deutsche Bank. Plaintiff Cleveland Housing Renewal Project, Inc. ("CHRP"), filed the action in the Cleveland Municipal Housing Court seeking declaratory and injunctive relief. Deutsche Bank removed the action to federal court based on the parties' diversity of citizenship. However, the district court granted CHRP's motion to remand.  The court concluded that subject matter jurisdiction was established by virtue of the parties' diversity of citizenship and that CHRP had standing to proceed in federal court.  The court nonetheless remanded the action to state court based on *Burford* abstention, to avoid federal disruption of a coherent state policy regarding a matter of substantial public concern.  Deutsche Bank timely appealed.  Finding that abstention is not warranted, we vacate the abstention order and remand the case to the district court for further proceedings on CHRP's complaint.

**I.  BACKGROUND**

Plaintiff CHRP is a private non-profit corporation whose principal goal is the improvement and renewal of housing and economic conditions in the City of Cleveland. We accept that the four affiliated Deutsche Bank entities named as defendants comprise a national banking association incorporated under the laws of the United States and include a New York state chartered trust company.

CHRP filed its complaint on December 15, 2008, in the Cleveland Municipal Housing Court, (1) seeking a declaration that each of twenty-five named residential properties allegedly owned by Deutsche Bank constitutes a "public nuisance" as defined by Ohio law, being a menace to the public health, welfare, or safety; and (2) seeking injunctive relief requiring Deutsche Bank to abate the alleged nuisances. The complaint

also alleges that Deutsche Bank's "business practices" relating to the maintenance and sale of properties subject to foreclosure amount to common-law nuisances, in that homes are sold at extremely distressed prices, purchased by speculators, "flipped," and ultimately abandoned, to the detriment of property values and neighborhood quality. CHRP alleges that Deutsche Bank's practices place homes in a "post foreclosure death spiral: vacancy → boarded windows and doors → break-ins and vandalism → theft of the home's assets (copper, aluminum, iron) → haven for criminal activity → decrease in neighboring housing values." R. 1, Complaint ¶ 5. CHRP also seeks an injunction prohibiting these practices.

In addition to Deutsche Bank, CHRP named the City of Cleveland as a defendant. The complaint does not allege any cause of action against the City, nor does it seek any relief from the City. The complaint identifies the City as an entity that "may have or claim to have some interest in real property that is the subject of this action by virtue of code violations, utility assessments and Nuisance abatement costs." R. 1, Complaint ¶ 8. In answering the complaint, the City asserted cross-claims against Deutsche Bank. Deutsche Bank removed this action to federal court on the basis of diversity of citizenship.

CHRP filed a motion to remand, contending primarily that the district court lacked jurisdiction because (i) CHRP lacked Article III and prudential standing; (ii) the City was a non-diverse defendant; and (iii) the jurisdictional amount-in-controversy requirement had not been satisfied. Alternatively, CHRP argued that the district court should abstain from exercising jurisdiction under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Deutsche Bank opposed remand and moved the district court to realign the City as a plaintiff. The district court granted Deutsche Bank's motion for realignment and ruled that it had jurisdiction over CHRP's claims, but declined to exercise jurisdiction under *Burford. See Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 606 F. Supp. 2d 698 (N.D. Ohio 2009).

Deutsche Bank filed a motion to reconsider and presented the district court with "newly discovered evidence" concerning the Cleveland Housing Court Judge's alleged bias in this case. The court dismissed the notion of any bias in the housing court, noting that Ohio law provides for disqualification of judges and appellate review of housing court decisions and denied the motion to reconsider. *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 2009 WL 1034236 (N.D. Ohio, April 16, 2009). Deutsche Bank timely filed notice of appeal.

## II.  ANALYSIS

### A.  Appellate Jurisdiction

We have jurisdiction to decide this appeal. In *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711-12 (1996), the Supreme Court held that 28 U.S.C. § 1447(d), which bars appellate review of remand orders in some instances, must be read *in pari materia* with 28 U.S.C. § 1447(c), "so that only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)." *Id.* (quoting *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127 (1995)). In *Quackenbush*, the Court held that an abstention-based remand order does not come within a category of remand orders that are immune from review. *Id.* at 712. In other words, per *Quackenbush*, an abstention-based remand order is subject to appellate review.

CHRP argues that Congress's 1996 amendment of § 1447(c) to include reference to "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction" changes the meaning of § 1447(c) and renders abstention-based remands also immune from appellate review. Yet, in an opinion issued last year, the Supreme Court declined to read the amendment as working a material change. *Carlsbad Technology, Inc. v. HIF Bio, Inc.,* — U.S. —, 129 S.Ct. 1862 (2009). Specifically, the Court recognized that remand orders based on a lack of subject matter jurisdiction are not reviewable, but held that a discretionary decision not to exercise jurisdiction is not a remand for lack of subject matter jurisdiction. *Id.* at 1866-67. In so ruling, the Court cited with approval *Quackenbush*'s holding that an abstention-based remand is not for

lack of subject matter jurisdiction.  *Id.* at 1866.  The Court refrained from revisiting the premises of the *Quackenbush* ruling, *id.* at 1866 n.*, despite expressed unease over the extent to which the Court's applications of § 1447(d) appear to be at odds with the provision's plain language, *see id* at 1868-69 (Scalia, J., concurring, and Souter, J., concurring).

We follow the Supreme Court's lead.  Accordingly, CHRP's objection to appellate jurisdiction is overruled.

**B.  Subject Matter Jurisdiction**

As a second threshold matter, CHRP argues that irrespective of the merits of *Burford* abstention, the district court's order of remand should be affirmed because the district court lacked subject matter jurisdiction in the first place.  CHRP contends the parties are not completely diverse and the amount-in-controversy is less than $75,000. *See* 28 U.S.C. § 1332.  This Court reviews a district court's decision regarding subject matter jurisdiction *de novo*.  *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 604 (6th Cir. 2007).  The party invoking federal court jurisdiction—in this case, Deutsche Bank, as removing party—has the burden of demonstrating by competent proof that the complete-diversity and amount-in-controversy requirements are met.  *Hertz Corp. v. Friend*, — U.S. —, 130 S.Ct. 1181, 1194-95 (2010).

**1. *Diversity of Citizenship***

CHRP named the City of Cleveland ("the City") as a defendant.  Because both CHRP and the City are citizens of Ohio, CHRP argued below that complete diversity of citizenship was lacking and that the district court did not have subject matter jurisdiction.  CHRP insisted that the City was a properly joined party, who was not a nominal or formal party, and whose presence was required to avoid the problem of a potential buyer taking the property subject to the City's super-priority lien for unrecorded assessments.  The district court, however, granted Deutsche Bank's motion to realign the City as a plaintiff, which created complete diversity between all plaintiffs

and all defendants. *Cleveland Housing*, 606 F. Supp. 2d at 709-10. The district court found that CHRP's concerns regarding liens the City might hold on the properties to be ancillary or secondary to the ultimate purpose of the lawsuit, i.e., to abate the conditions creating the nuisance. *Id.* In relation to the primary dispute in controversy, the district court concluded that the City's interests are aligned with those of CHRP.

The district court properly recognized that it is the court's responsibility to ensure that the parties are properly aligned according to their interests in the litigation. *See United States Fidelity and Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992) (citing *City of Indianapolis v. Chase Nat'l Bank of City of New York*, 314 U.S. 63, 69 (1941)). Parties must "be aligned in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment." *Id.* The primary controversy in this case clearly stems from CHRP's demand that Deutsche Bank abate alleged nuisances relating to its properties and be enjoined from creating and maintaining similar nuisances in the future. The purpose of the action is to remedy "the condition of the vacant, abandoned and foreclosed properties located within the Cleveland neighborhoods [CHRP] serves." R. 5-2, Mot. to Remand at 1. The City's interests are not adverse to this purpose. In fact, to the extent that CHRP may be successful, the City will also benefit. The conclusion that CHRP's and the City's interests are aligned, not adverse, in relation to the primary purpose of the litigation is corroborated by the fact that the City filed a cross-claim to recover the costs of abating nuisances at several of the properties at issue. Should CHRP ultimately prevail and obtain injunctive relief, Deutsche Bank will be enjoined from engaging in similar conduct with respect to similar properties in the Cleveland area, potentially sparing the City the costs of future nuisance abatement.

CHRP does not directly challenge this characterization of the primary controversy between the parties, but argues that the parties' common interests in abating the complained of nuisance conditions are insufficient reason to re-align the parties. Yet, the potentially adverse interests represented by the City's liens on some of the properties are clearly "ancillary" or "secondary" to the primary controversy. To find

error in the district court's realignment of the parties, we would have to disregard the teaching of *Thomas Solvent* and *Indianapolis v. Chase Nat'l Bank*. This we are unwilling to do. Accordingly, we hold that the district court properly realigned the City as a plaintiff and properly held there is complete diversity between the parties for purposes of subject matter jurisdiction.

### 2. *Amount in Controversy*

CHRP also challenges the district court's finding that the amount-in-controversy requirement for diversity jurisdiction is met. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Additionally, we have observed that the "costs of complying with an injunction . . . may establish the amount-in-controversy." *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006). Deutsche Bank has the burden of showing that the requirement "more likely than not" is satisfied. *Everett*, 460 F.3d at 822.

The district court was persuaded by Deutsche Bank's showing that injunctive relief requiring it to abate the alleged nuisances or demolish the twenty-five residential properties and requiring it to alter its business practices would result in costs to Deutsche Bank in excess of $75,000. *Cleveland Housing*, 606 F. Supp. 2d at 711. Again, CHRP does not directly challenge the district court's finding, but argues that the amount in controversy should be determined from its viewpoint, rather than Deutsche Bank's. CHRP does not explain what the value of injunctive relief would be or how the value of such relief should be assessed, but asserts simply that the value of the relief is less than $75,000.

While the value of the requested injunctive relief to CHRP may be difficult to quantify, the notion that abatement of nuisances on twenty-five parcels of abandoned property would amount to improvement valued at less than $75,000 is patently suspect. CHRP seeks to have twenty-five properties declared public nuisances and require the defendants to abate each nuisance, which may include, according to the complaint,

replacement of the home's assets, such as copper or aluminum, repairing or replacing doors and windows, and repairing vandalism damage. As an alternative to abating the twenty-five properties at issue in this litigation, CHRP seeks to have the properties demolished.

Deutsche Bank has satisfactorily shown that it is "more likely than not" that the amount-in-controversy requirement is met. The district court recognized that the Cuyahoga County Auditor's valuation of the twenty-five properties at a total of more than $1.3 million is likely inflated, but correctly concluded that potential demolition of even just several properties would likely result in costs exceeding $75,000. *Id.* Indeed, common sense dictates that the significant remedial measures or complete destruction of the properties CHRP seeks would certainly cost, on average, in excess of $3,000 per structure. In its rather perfunctory challenge to the district court's amount-in-controversy determination, CHRP has failed to show error.

Accordingly, we hold that the district court properly satisfied itself of its subject matter jurisdiction under 28 U.S.C. § 1332.

### C. Article III Standing

Even if subject matter jurisdiction is established, CHRP maintains that remand to state court is warranted on the ground that it lacks standing to proceed with its claims in federal court. The district court overruled the objection, holding that CHRP does have standing. The district court correctly identified and applied the three constitutional standing requirements: (1) injury in fact, (2) traceable to the defendant's challenged actions, (3) which is redressable by a favorable decision. *Cleveland Housing*, 606 F. Supp. 2d at 705 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181-82 (2000), and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The district court concluded that CHRP had adequately alleged cognizable injury to its organizational efforts to renew and improve blighted Cleveland neighborhoods. *Id.* at 705-08 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). The district court was also satisfied that CHRP's complaint contained

adequate allegations that the injury was traceable to Deutsche Bank's practices and that the injury was redressable through injunctive relief.

Further, the district court recognized that there are also "several judicially self-imposed limitations on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751 (1984). The court held that CHRP's complaint meets all of these prudential requirements. *Cleveland Housing*, 606 F. Supp. 2d at 708-09.

On appeal, CHRP has not mounted a serious challenge to the district court's analysis of the constitutional or prudential standing requirements. Indeed, we find no error in the district court's holding that CHRP has standing to prosecute this action in federal court.

### D. *Burford* Abstention

The district court remanded the case to state court based on *Burford* abstention. The Supreme Court ruled in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), that federal courts "should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Id.* at 318. The district court's decision to abstain is reviewed *de novo*. *See Saginaw Housing Com'n v. Bannum, Inc.*, 576 F.3d 620, 625 (6th Cir. 2009).

There are two leading Supreme Court rulings on *Burford* abstention, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996), and *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989) ("*NOPSI*"). In *Quackenbush*, the Court observed that *Burford* abstention is a matter of equitable discretion reflecting principles of federalism and comity and requiring the balancing of

federal interests in retaining jurisdiction against the competing concern for the independence of state action:

> The equitable decision balances the *strong federal interest* in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining uniformity in the treatment of an essentially local problem, and retaining local control over difficult questions of state law bearing on policy problems of substantial public import. This balance only *rarely* favors abstention, and the power to dismiss recognized in *Burford* represents an *extraordinary* and *narrow* exception to the duty of the District Court to adjudicate a controversy properly before it.

*Quackenbush*, 517 U.S. at 728 (citations and quotation marks omitted; emphasis added). The *Quackenbush* Court noted that its overruling of abstention in *NOPSI* represented a recent application of these principles in relation to a claim of federal preemption of state administrative proceedings, illustrating the narrow range of circumstances in which *Burford* abstention may be justified. *Id.* at 726. The Court characterized the *NOPSI* ruling as follows:

> We thus indicated that *Burford* allows a federal court to dismiss a case only if it presents "'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,'" or if its adjudication in a federal forum "'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'"

*Id.* at 726-27 (quoting *NOPSI*, 491 U.S. at 361).

In *NOPSI*, the state interests were evidenced by a state administrative regulatory scheme, but such a statewide regulatory scheme is not necessarily prerequisite to *Burford* abstention. *Saginaw Housing*, 576 F.3d at 627. Because *Burford* abstention is concerned with potential disruption of a state regulatory scheme, "[t]he key question is whether an erroneous federal court decision could impair the state's effort to implement its policy." *Id.* at 626 (quoting *Ada-Cascade Watch Co., Inc. v. Cascade Res. Recovery, Inc.*, 720 F.3d 897, 903 (6th Cir. 1983)).

## 1. *Federal Interests*

First, we examine the federal interests. The instant action, removed based on the parties' diversity, falls within one of those "classes of cases" to which a "strong federal interest" attaches. *Quackenbush*, 517 U.S. at 728. Unlike *Quackenbush*, which involved the Federal Arbitration Act, and *NOPSI*, which presented a question of federal preemption, no federal statute or federal right is implicated in this case. CHRP's complaint is premised exclusively on Ohio state law. There is, however, a strong federal interest in adjudicating cases brought under the congressional grant of diversity jurisdiction:

> By conferring jurisdiction on the federal courts in diversity cases through 28 U.S.C. § 1332, Congress intended a uniformly administered federal judicial system, which affords litigants of diverse citizenship convenient forums in which to vindicate their rights. Although the basic Congressional purpose behind the grant of diversity jurisdiction was to protect out-of-state suitors from the prejudice of state courts, . . . . the Congressional purpose was broader. By vesting the federal district courts with equity jurisdiction and guaranteeing adequate appeals within the federal judicial system, Congress afforded procedures and remedies that were not available in the courts of several states.

*Miller v. Davis*, 507 F.2d 308, 316-317 (6th Cir. 1974) (footnote, citations omitted).

The district court was cognizant of the federal interest in diversity jurisdiction, but noted that such interest was "particularly strong" in *Miller* because that case involved a large nationwide pension fund. The district court determined that the federal interest in affording a federal forum for CHRP's complaint is not as strong because no such national concern is presented in this case. *Cleveland Housing*, 606 F. Supp. 2d at 713.

Deutsche Bank insists there are federal interests in this case beyond the virtues of diversity jurisdiction, noting that Congress has recently appropriated $2 billion for the redevelopment of real estate markets in distress due to foreclosures. Deutsche Bank also points to various governmental organizations and programs designed to address the

problem of home foreclosures throughout the country as evidence that this case touches on matters of nationwide import. Indeed, we can take judicial notice of the fact that residential foreclosures represent a nationwide epidemic that has precipitated various governmental remedial measures. Yet, this carries little weight in measuring the federal interests in adjudicating the claims asserted in CHRP's complaint. This action is not addressed to the problems associated with residential foreclosures generally; it is aimed at abating nuisances allegedly caused by Deutsche Bank at twenty-five identified locations in the Cleveland area. The fact that government funds have been appropriated to address the nation's foreclosure crisis does not affect the application of Ohio public nuisance law in relation to the twenty-five properties in Cleveland.

Nor are we impressed by Deutsche Bank's argument that CHRP's "broadside attack" on Deutsche Bank's "business practices" could result in imposition of local restrictions on the national operations of federally regulated businesses. The argument hints at the notion of federal preemption, but is based only on potential conflicts too speculative to materially enhance the federal interests weighing against *Burford* abstention.

Yet, though unpersuaded by Deutsche Bank's arguments that there are federal interests beyond the virtues of diversity jurisdiction, we believe the district court improperly undervalued the strength of the federal interest in affording a neutral forum for the adjudication of disputes between parties of diverse citizenship. The district court characterized the federal interest based on diversity jurisdiction *sans* other federal rights as being "at its nadir." *Cleveland Housing*, 606 F. Supp. 2d at 714. The court's implicit conclusion that diversity jurisdiction represents a "strong" federal interest only if accompanied by *other* federal interests is based on a faulty negative inference. In *Miller v. Davis*, as the district court observed, there were, in addition to diversity jurisdiction, other federal interests that helped render abstention inappropriate. Yet this does not compel the conclusion that abstention *is* appropriate if diversity jurisdiction represents the only strong federal interest. Additional federal interests make an already strong

federal interest stronger, but their absence does not render an already strong federal interest weak.

In our opinion, the importance of diversity jurisdiction is particularly strong in this case, where the state law claims (a) are of intense local concern, (b) are asserted against not just citizens of different states, but affiliates of manifestly "foreign" (i.e., German) corporations, and (c) would otherwise be adjudicated by a locally-elected municipal judge. The district court's minimization of the "strong federal interest" in affording Deutsche Bank a neutral forum for the adjudication of CHRP's state law claims is a flaw that materially affected its interest-balancing analysis.

## 2. *State Interests*

The state interests that may be deemed to outweigh the federal interests must stem from the need to maintain uniformity in the treatment of an essentially local problem, and the need to retain local control over difficult questions of state law bearing on policy problems of substantial public import. *Quackenbush*, 517 U.S. at 728. The district court noted that the Ohio legislature had expressed a strong interest in the Cleveland housing market by (1) establishing a specialized housing division in the Cleveland Municipal Court with exclusive jurisdiction over statutory public nuisance claims; and (2) authorizing Cuyahoga County (the county surrounding Cleveland) to create a land reutilization corporation for the purpose of promoting reclamation and development and managing of vacant real property. *Cleveland Housing*, 606 F. Supp. 2d at 714-15. Further, with reference to the first *NOPSI* factor, the district court held that CHRP's common-law public nuisance claim, attacking Deutsche Bank's "business practices," presents a difficult question of state law bearing on policy problems of substantial public import. *Id.* at 715. As to the second factor, the district court held that federal adjudication of CHRP's statutory public nuisance claim could disrupt state efforts to establish a coherent policy through uniform adjudication of such claims in the specialized housing division of the municipal court. *Id.* at 715-16.

Having thus identified two state interests that qualified, per *NOPSI*, for *Quackenbush* balancing against the federal interests, the district court gave short shrift to the actual balancing, and summarily concluded that "a balancing of the respective federal and state interests suggests that this court must abstain." *Id.* at 716. Deutsche Bank challenges this conclusion on several grounds.

First, Deutsche Bank notes that the *NOPSI* factors represent cognizable state interests weighing in favor of abstention only "where timely and adequate state-court review is available." *NOPSI*, 491 U.S. at 361. Deutsche Bank argues that adequate review is unavailable in the housing division of the Cleveland Municipal Court because the sole judge of the housing court has made numerous public statements evidencing his bias against banks and mortgage companies in relation to nuisance conditions at vacant properties. We are not persuaded.

The statements attributed to the housing court judge do not relate specifically to this litigation or the properties here at issue. While the statements may be construed as raising questions, they do not necessarily reflect adversely on the housing court judge's ability to adjudicate CHRP's claims fairly and impartially. Under Ohio law, the housing court judge is subject to disqualification upon a proper showing, and the judge's rulings are subject to appellate review. For these reasons, the statements identified by Deutsche Bank do not demonstrate that available state-court review is inadequate.

Next, Deutsche Bank challenges the district court's reliance on the first *NOPSI* factor as warranting abstention in relation to CHRP's common-law public nuisance claim. Deutsche Bank concedes that CHRP's business practices claim presents a novel claim, but argues it has not been shown to present a "difficult question." The claim that Deutsche Bank's business practices create a public nuisance is based on *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002). In *Beretta*, the court reversed dismissal of a claim alleging that several gun manufacturers had "created and maintained a public nuisance by manufacturing, marketing, distributing, and selling firearms in ways that unreasonably interfere with public health, welfare, and safety in Cincinnati." *Id.* at

1141. The *Beretta* court applied what it called the "broad language" of the Restatement definition of "public nuisance" as "an unreasonable interference with a right common to the general public." *Id.* at 1142 (quoting 4 Restatement of the Law 2d, Torts (1965) § 821B(1)). Further, the court defined "unreasonable interference" as including "those acts that significantly interfere with public health, safety, peace, comfort, or convenience, conduct that is contrary to a statute, ordinance, or regulation, or conduct that is of a continuing nature or one which has produced a permanent or long-lasting effect upon the public right, an effect of which the actor is aware or should be aware." *Id.*

Considering the broad definitions applied by the Ohio Supreme Court in *Beretta* and the apparent ease with which the court reasoned that the alleged business practices of gun manufacturers, distributors and dealers could come within those definitions, it is not immediately apparent what makes CHRP's business practices claim "difficult," as opposed to merely "novel." In fact, the *Beretta* court expressly observed that it had "often applied public nuisance law to actions connected to real property." *Id.* The Ohio common law to be applied, derived from the Restatement, thus appears to be settled, even though the application of the law to Deutsche Bank's alleged "business practices" may be novel. A novel question is not necessarily a difficult question; every application of settled law to a particular set of factual allegations is unique or novel in some respects.

Moreover, even if the claim were deemed to represent a "difficult question" of state tort law, it is doubtful that this circumstance alone would justify abstention. *Burford* abstention is concerned with avoiding "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar"—questions, whose resolution by a federal court "would be disruptive of state efforts to establish a coherent policy." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976). In other words, not just any difficult question will do. Neither party has cited and we are unaware of any authority for the proposition that *Burford* abstention is appropriate based solely on the finding of a

difficult question of state law—i.e., without there also being a risk of disrupting coherent state policy.

CHRP relies on *Minot v. Eckardt-Minot*, 13 F.3d 590 (2d Cir. 1994), where, in a diversity action, the court, reviewing for abuse of discretion, upheld abstention in relation to the tort claim of "custodial interference," a "paradigmatic example" of a "difficult question of state law." *Id.* at 593.[1] In *Minot*, due to "the spectre of local bias," the court was wary of using abstention to deny an out-of-state litigant the federal forum she preferred. *Id.* Yet, the court also noted that New York law in this area was newly developing and recognition of the tort of custodial interference "would significantly change the landscape of custody disputes." *Id.* at 594. The court noted that "questions concerning child custody are peculiarly ill-suited for federal court adjudication." *Id.* (quoting *Casaburro v. Daher*, 569 F. Supp. 835, 836 (S.D.N.Y. 1983)). Still, the family law nature of the controversy alone would not have justified abstention if it had presented a simple application of settled law. *Id.* Rather, it was because the case required "defining and developing the exact contours of a tort of custodial interference" in a context of tangled equities that the state law question was deemed "especially complicated." *Id.* at n.3. The court thus reasoned that "[a] state court should lead the way in developing its law in this area, balancing the delicate issues involved here." *Id.*

Here, in contrast, the Ohio common law of public nuisance is settled. The state law definitions and standards to be applied to CHRP's novel allegations are clear and well-developed. While land use policy is undoubtedly a matter of substantial public concern, *see Saginaw Housing*, 576 F.3d at 628, there is no reason to believe that the federal court's application of settled law to the facts alleged in support of CHRP's common law public nuisance claim would be disruptive of any coherent state policy.[2]

---

[1] Although earlier Sixth Circuit opinions also applied the more deferential abuse-of-discretion standard in reviewing abstention rulings, *de novo* review is now the rule of this circuit. *Saginaw Housing*, 576 F.3d at 625 n.3.

[2] We express no opinion, of course, as to the facial validity of CHRP's common law public nuisance claim. In *City of Cleveland v. Ameriquest Mort. Securities, Inc.*, – F.3d – , 2010 WL 2901049 (6th Cir., July 27, 2010), a case in which the question of abstention was not raised, we affirmed dismissal of an analogous business-practices public nuisance claim for failure to state a claim.

Accordingly, we conclude the district court erred in holding that the state has a strong interest because the case presents a difficult question of state law.

Finally, Deutsche Bank also challenges the district court's assessment of the state's interest in adjudication of CHRP's statutory public nuisance claim under the second *NOPSI* factor. Relying on *Saginaw Housing*, a decision rendered after the district court issued its abstention ruling, Deutsche Bank contends that Ohio's interest in land use policy and nuisance abatement is not shown to have taken the form of a coherent statewide policy that would be disrupted by federal court adjudication. We agree.

In *Saginaw Housing*, the Saginaw Housing Commission sought to enjoin the construction of a halfway house, pursuant to a *municipal* land use ordinance. Even though the action required interpretation of a local land use ordinance, we reversed the district court's abstention order because there was no evidence that federal involvement would disrupt a coherent state policy. We recognized that both state and local policies were at play, but held that municipalities, unlike states, are not themselves sovereign and are not entitled to the same federal deference that the states receive. *Saginaw Housing*, 576 F.3d at 626. We acknowledged that the City of Saginaw had implemented the subject ordinance pursuant to state law, the Township Zoning Act. However, the State of Michigan had not created an administrative agency to promulgate and administer and uniformly enforce state policy. Nor had the state, in delegating authority to municipalities under the Township Zoning Act, established substantive standards to guide municipalities in creating and enforcing their own ordinances. *Id.* at 627. We found that the Township Zoning Act did not "display any other hallmarks of a complex and uniform approach to land use issues." *Id.* at 628. Thus finding minimal evidence of a coherent state policy that would be disrupted by federal involvement, we held that *Burford* abstention was inappropriate.

The *Saginaw Housing* opinion emphasizes the importance of a threatened disruption of state efforts as integral to interest-balancing and prerequisite to *Burford* abstention:

> *Burford* abstention often protects "complex state administrative processes from undue federal interference." . . . That said, "it does not require abstention wherever there exists such a process." . . . "Because *Burford* abstention is concerned with potential disruption of a state administrative scheme, rather than the mere existence of such a scheme, looking behind the action to determine whether it implicates the concerns of *Burford* is necessary." . . . "The key question is whether an erroneous federal court decision could impair the state's effort to implement its policy."
>
> . . . .
>
> Every case in which we have found *Burford* abstention appropriate has involved evidence that federal involvement would disrupt a coherent state policy.

*Id.* at 626 (citations omitted).

Here, Ohio's public nuisance statute, R.C. § 3767.41, evidences greater state concern and involvement in local land use regulation than was presented in *Saginaw Housing*. The statute includes a definitional section, incorporating federal regulatory standards in relation to federal subsidized housing. It prescribes the nature of the civil action that may be used "to enforce *any* local building, housing, air pollution, sanitation, health, fire, zoning, or safety code, ordinance, resolution, or regulation applicable to buildings." R.C. § 3767.41(B)(1)(a) (emphasis added). The statute also sets forth procedures relating to injunctive relief, authorization of interested parties to abate a nuisance, and appointment of a receiver. The statute permits the filing of such an action in any appropriate court of common pleas, municipal court, housing or environmental division of a municipal court, or county court.

On the other hand, here, as in *Saginaw Housing*, the state did not create and empower an agency to oversee uniform administration and enforcement of a comprehensive statewide regulatory scheme. While the presence of state administrative agency involvement is not prerequisite to *Burford* abstention, it represents an important

indicator of the state's interest in implementing a coherent policy. *Saginaw Housing*, 576 F.3d at 627. Here, rather, the state has established a general form and procedure for enforcement of predominantly *local* ordinances and regulations and has delegated authority for their enforcement to any of various courts. As the district court noted, *Cleveland Housing*, 606 F. Supp. 2d at 714, the state legislature has evidenced special interest in the Cleveland and Toledo housing markets by specifically creating a housing division in each city's municipal court and granting it exclusive jurisdiction over public nuisance claims arising within its territory. R.C. §§ 1901.011, 1901.181(A)(1). Yet, this specialized interest in the administration of local building ordinances and regulations in only two of the eighty-eight Ohio counties actually weighs against a finding that there is a coherent *statewide* policy. That the housing division of the Cleveland Municipal Court may strive for uniformity in its regulation of the housing market within its local territory is not a factor warranting federal court abstention. *Saginaw Housing*, 576 F.3d at 626.

Moreover, here, as in *Saginaw Housing*, there is precious little showing of just how adjudication of CHRP's statutory public nuisance claim in a federal court in Cleveland, rather than in the municipal court in Cleveland, applying the very same standards, would disrupt or impair state efforts to implement a statewide policy. As *Saginaw Housing* makes clear, the mere existence of Ohio's statutory scheme is not enough to warrant abstention; there must be a threat of disruption or impairment of the state's efforts to implement a coherent uniform policy. CHRP has not made a strong showing of a coherent statewide policy or a threatened disruption thereof. Indeed, the district court's finding that CHRP *did* make a sufficient showing is decidedly unconvincing. It consists of one conclusory sentence: "Federal interference in this local matter may disrupt the state's efforts to have such cases uniformly adjudicated." *Cleveland Housing*, 606 F. Supp. 2d at 716. We are not persuaded.

We therefore conclude, in relation to the second *NOPSI* factor, too, that the district court erred in finding that Ohio has a strong cognizable interest in state court adjudication of CHRP's statutory public nuisance claim.

### 3. *Interest Balancing*

Accordingly, we find that the district court undervalued the importance of the federal interest at stake and overvalued the strength of the state interests. Inasmuch as CHRP has failed to demonstrate that its common law public nuisance claim presents a difficult question of state law, and that federal court adjudication of its statutory public nuisance claim threatens to disrupt the state's effort to implement a coherent statewide policy, we hold that the state interests are outweighed by the strong federal interest in affording foreign litigants a neutral forum for the adjudication of state law claims against them. CHRP has failed to show that its complaint presents such extraordinary circumstances as to come within that narrow exception to the exercise of federal jurisdiction represented by *Burford* abstention.

## III. CONCLUSION

For the foregoing reasons, we uphold the district court's realignment of the parties to establish complete diversity, as well as its holding that CHRP has standing to proceed on its complaint in federal court. Concluding that *Burford* abstention is not warranted, however, we **VACATE** the district court's order remanding the action to the state court, and **REMAND** the action to the district court for further proceedings on CHRP's complaint.