NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0876n.06

No. 11-1261

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

PATRICK J. DEVLIN,

      Plaintiff-Appellant,

v.

RICHARD S. KALM; FREDERICK J.
CLELAND; ERICA T. BUSH; DALE E.
BEACHNAU; MICHAEL DAVIS;
DOMINICK P. ALAGNA; AND JANET M.
McMCLELLAND,

      Defendants-Appellees.

_____/

FILED

**Aug 09, 2012**

LEONARD GREEN, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    SUHRHEINRICH, MOORE, and CLAY, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Patrick J. Devlin appeals the district court's order granting Defendants' motions to dismiss based on the abstention doctrine and the court's denial of Plaintiff's motion for default judgment. Plaintiff argues that his termination from the Michigan Gaming Control Board was retaliatory in violation of his First Amendment rights under 42 U.S.C. §§ 1983, 1985, 1986, and 1988 and his due process rights, after he made disparaging remarks to the press about the Michigan Attorney General and the application of the state's gaming laws to Native American tribes.

No. 11-1261

For the reasons set forth below, we **AFFIRM** in part and **REVERSE** in part, and **REMAND**

for further proceedings.

## BACKGROUND

This action arises from the Michigan Gaming Control Board's (MGCB) decision to terminate Plaintiff's employment shortly after he filed two whistleblower lawsuits in his individual capacity in the Ingham County Circuit Court of Michigan on June 3, 2008.[1] Plaintiff's first lawsuit involved a mandamus action to compel the Michigan Attorney General to enforce the State's liquor laws against tribal casino management. His second lawsuit was against the Michigan Civil Service Commission (MCSC), the Michigan Department of Treasury, and the MGCB. Plaintiff alleged that these state agencies failed to comply with their constitutional mandate to evaluate all potential candidates for employment exclusively on the basis of merit.[2] *See* Mich. Const. 1963, art. 11, § 5. After filing these lawsuits, Plaintiff made two statements that were published in the local Michigan newspapers on June 4 and 5, 2008. Plaintiff allegedly referred to the Attorney General as a "deadbeat" and made accusations that the Attorney General failed to enforce the State's liquor laws against tribal casinos.

---

[1] The MGCB is a subgroup of the Michigan Department of Treasury and is responsible for licensing and regulating commercial casinos and their suppliers and employees in Detroit, regulating pari-mutuel horse racing, and overseeing Native American casinos in Michigan. *See* Mich.Comp. Laws § 432.204.

[2] The state circuit court granted both the Michigan Attorney General's dispositive motion and the MGCB/Treasury Defendants' motion for summary disposition. Plaintiff has appealed both state trial court decisions to the Michigan Court of Appeals.

The MGCB placed Plaintiff on paid suspension on June 6, 2008. A letter was also sent to Plaintiff on June 25, 2008 that requested him to appear for questioning regarding his comments to the press. Defendant Michael Davis, the Michigan labor relations representative for the Michigan Department of Treasury, sent a second letter to Plaintiff requesting his attendance at a disciplinary conference scheduled for July 24, 2008. The letter also warned Plaintiff that the "probable discipline to be imposed [for Plaintiff's statements to the press] was dismissal from the job" due to violations of the Michigan Department of Treasury policy as well as the MGCB's policy, procedures, work rules, and directives. On July 21, 2008, Plaintiff sent a letter to Defendant Davis and copied all other Defendants in this matter responding to Defendant's allegations and charges.[3] Plaintiff's letter stated that the "proposed charges were unlawful as retaliation for exercise of Plaintiff's First Amendment rights." Defendants did not respond to the letter.

Plaintiff attended the July 24, 2008 disciplinary conference without an attorney present. At the conference, Defendants Davis and Alagna presented Plaintiff a Notice of Dismissal. The Notice indicated that Plaintiff was being terminated because of the comments he made to the press and that he was further prohibited from having any contact with the media about anything related to Native Americans or gaming. Plaintiff requested additional evidence from Defendants that supported the charges for his dismissal. Defendants identified two internal memos— a memo from Defendant Eric Bush dated June 6, 2008, which requested an investigation and discipline for Plaintiff's actions and

---

[3]Defendants in this action include Richard S. Kalm, Executive Director of the MGCB; Federick J. Cleland, Deputy Director for Licensing of the MGCB; Eric T. Bush, Administrative Manager for the MGCB; Dale E. Beachnau, Human Resources Administrator for the Michigan Department of Treasury; Michael Davis, labor relations representative for the Michigan Department of Treasury; and Dominick P. Alagna, Casino Employee Licensing Manager for the MGCB.

also a May 30, 2008 memo from Defendant Richard Kalm to Plaintiff. At the conclusion of the

hearing, Plaintiff was discharged from his position.

On August 7, 2008, Plaintiff filed a grievance with the MCSC to dispute his termination.[4]

Plaintiff alleged that his termination violated Michigan civil service rules, and he sought relief in the

form of reinstatement and back pay, or front pay from his termination due to his planned retirement.

The MCSC denied Plaintiff's grievance, and Plaintiff appealed to a Step 2 official. The Step 2

official also denied the grievance, and Plaintiff filed a Step 3 appeal in accordance with the MCSC

procedures.[5]

---

[4]Under the Michigan Constitution, the MCSC has the authority to:

> classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service.

Mich. Const. 1963, art. 11, § 5.

[5]The MCSC grievance procedure is as follows: a Step 1 grievance triggers an informal conference and an answer to the grievance. A grievant may appeal the written answer to a Step 2 official who also holds a conference at his/her discretion and issues a written answer. If the grievant is dissatisfied with the result, he/she may file a Step 3 grievance in which the appeal is reviewed by an administrative officer. If the grievance is not summarily dismissed, the appeal is referred to a hearing officer for resolution. At this stage, if the appeal is not decided on summary disposition then a hearing officer may conduct an evidentiary hearing or in the alternative a grievant may pursue arbitration. A hearing officer then issues a written decision based on its investigation. A grievant has a right to appeal the hearing officer's decision to the MCSC. The Employment Relations Board reviews the record from the hearing and additional briefs submitted by the parties and then makes a recommendation to the MCSC. The MCSC makes the final agency decision. A grievant may appeal the final decision to the state circuit court. (Defs' Br. 14–15.)

In addition, Plaintiff filed this action in federal court against various officials employed with the MGCB, the Michigan Department of Treasury, and the MCSC, challenging his termination. The complaint alleged violations of Plaintiff's First Amendment free speech rights (Count I), age discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Law § 37.2101 *et seq*. (Count II), and a violation of his due process rights (Count III). Plaintiff sought both injunctive and monetary relief. On September 5, 2008, the district court dismissed Count II of Plaintiff's complaint.

Defendants collectively filed a motion to dismiss on Plaintiff's remaining counts (Counts I and III) in his complaint pursuant to Rule 12(b)(1) based on the doctrine of abstention under *Younger v. Harris*, 401 U.S. 37 (1971). In addition, Defendant Janet McClelland, State Personnel Director for the MCSC, separately filed a motion to dismiss alleging that Plaintiff failed to state a claim against her and that as a government employee, she is protected under the doctrines of qualified immunity and Eleventh Amendment immunity.

On March 19, 2009, the district court dismissed all remaining counts based on *Younger* abstention, finding that "the MCSC has the exclusive power to determine the issues that Plaintiff raises in this lawsuit." The district court also granted Defendant McClelland's motion. Plaintiff appealed to this Court. We ordered that the judgment of the district court be vacated and remanded the case for further proceedings on the basis that *Younger* abstention did not apply. However, we left unresolved whether Plaintiff's case could be dismissed or stayed "on other theories, such as abstention under *Burford* or *Colorado River*." *Devlin v. Kalm*, 594 F.3d 893, 896 (6th Cir. 2010).

Plaintiff also moved for entry of default judgment against Defendants pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure on July 14, 2010. Plaintiff alleged in his motion that Defendants failed to file an answer within fourteen days of this Court's decision. The district court clerk denied Plaintiff's request on July 15, 2010. Plaintiff filed a motion for reconsideration of the clerk's denial. Defendants filed their response to Plaintiff's request for entry of default on July 21, 2010.

Defendants filed a second motion to dismiss on July 19, 2010 pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). In their motion, Defendants sought dismissal of Count I and Count III of Plaintiff's complaint based on Eleventh Amendment immunity, qualified immunity, lack of standing, *Burford* and *Colorado River* abstention, failure to demonstrate the need for injunctive relief, and failure to state a claim upon which relief may be granted. In addition, Defendant Janet McClelland filed a second motion to dismiss Plaintiff's complaint.

While the motion for reconsideration was pending, Plaintiff filed an amended complaint with jury demand on August 9, 2010. The Amended Complaint sought compensatory and punitive damages and also injunctive relief. On August 25, 2010, Defendants filed a motion to dismiss Plaintiff's Amended Complaint, or in the alternative, to strike the jury demand pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. In their motion, Defendants reasserted the claims raised in their second motion to dismiss. Similarly, Defendant McClelland also moved to dismiss Plaintiff's Amended Complaint on September 15, 2010 asserting the same claims she made in her initial motion. The district court issued an order on January 21, 2011 denying Plaintiff's

motion for entry of default judgment and Plaintiff's motion for reconsideration of the clerk's denial of entry of default.

On February 17, 2011, the district court granted Defendants' motions to dismiss on the basis of the abstention doctrine outlined in *Burford* and *Colorado River* but did not address the remaining issues in Defendants' motion. Plaintiff now appeals.

## DISCUSSION

### I.      Abstention

We review *de novo* a district court's decision to abstain under *Burford* or *Colorado River*. *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 561 (6th Cir. 2010) (*Burford* abstention); *see also Bates v. Van Buren Twp.*, 122 F. App'x 803, 806 (6th Cir. 2004) (per curiam) (abstention decisions). Abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," therefore "[o]nly the clearest of justifications" warrant abstention. *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002).

The district court dismissed Plaintiff's case under both the *Burford* and *Colorado River* abstention doctrines on the basis that Plaintiff's grievance is "subject to appellate review at the Employment Relations Board and further with the MCSC" and that interference by a federal court may jeopardize the stability of the MCSC's internal review process and lead to piecemeal litigation.

Plaintiff challenges the district court's decision to abstain on appeal because he raises constitutional claims that do not implicate state law. For the reasons discussed herein, we reverse the district court's judgment dismissing Plaintiff's action under both abstention doctrines.

### A.   *Burford* **Abstention**

"*Burford* [abstention] is concerned with protecting complex state administrative processes from undue federal interference." *New Orleans Public Serv., Inc.*, *v. Council of New Orleans*, 491 U.S. 350, 362 (1989) ("*NOPSI*").  *Burford* abstention is appropriate if a case presents (1) "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or (2) if the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id*. at 361 (quoting *Colorado River Water Conservation Dist.*, *v. United States*, 424 U.S. 800, 814 (1976)).  The *Burford* abstention doctrine not only informs federal courts "*when* to exercise discretion (by considering whether a federal ruling might wreak havoc on a sensitive yet indeterminate area of state policy) [but also] *how* to exercise that discretion (by avoiding immediate resolution of the state law issue)." *Gray v. Bush*, 628 F.3d 779, 784 (6th Cir. 2010).

Turning to the case before us, the district court found that because the Michigan Constitution granted authority to the MCSC to address all employee grievances, then its rules and regulations implicated "important state interests" as required under the first prong.  However, Plaintiff's claims do not raise any "difficult questions of state law" that could potentially impact his case.  Plaintiff brought forth a First Amendment retaliation claim and a Fourteenth Amendment due process violation under *Loudermill v. Cleveland Board of Education*, 470 U.S. 532 (1985).[6]  The allegations

---

[6]The district court dismissed Plaintiff's state law claim of age discrimination under Mich. Comp. Law § 37.2101 *et seq*.

in Plaintiff's complaint derive solely from federal law and do not involve a state law issue that is "entangled in a skein of state law" or concern a "claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors." *NOPSI*, 491 U.S. at 361–62. Moreover, the MCSC only has authority to hear grievances brought by state employees against the MGCB over the terms and conditions of classified civil service employment. That authority does not extend to Plaintiff's claims of First Amendment retaliation and due process brought as an individual citizen.

This case also does not present an "exercise of federal review of [a] question . . . [that] would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern" that would trigger *Burford*'s second prong. *Colorado River*, 424 U.S. at 814. "The key question is whether an erroneous federal court decision could impair the state's effort to implement its policy." *Ada-Cascade Watch Co., Inc. v. Cascade Res. Recovery, Inc.*, 720 F.2d 897, 903 (6th Cir. 1984) (citations omitted). The district court found that Plaintiff's federal suit interfered with the MCSC's internal review process. We disagree. Plaintiff's claims do not interfere with a "matter of substantial public concern" or with the implementation of a coherent policy. By contrast, the claims primarily involve only federal constitutional rights and do not require an interpretation of state action and rules as part of a complex administrative system. In addition, Defendants failed to identify any policy problems of substantial public concern should we decide to review Plaintiff's federal claim. Although we recognize that the MGCB has established an administrative procedure to review internal complaints, the mere existence of an administrative process does not set in motion the application of *Burford* abstention. Defendants' argument that we should abstain because Plaintiff

9

filed a similar grievance through its administrative process directly conflicts with *Burford*. *Burford* "does not require abstention whenever there exists such a [state administrative] process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *NOPSI*, 491 U.S. at 362 (citing *Colorado River*, 424 U.S. at 815–16). Because Plaintiff's lawsuit does not interfere with state law or the state's administrative procedures, abstention under *Burford* is inappropriate.

We also identify an additional reason why *Burford* abstention is inappropriate in the present case. Recently, we established that abstention does not extend to actions seeking monetary relief. *See Gray*, 628 F.3d at 785 (holding that a district court does not have the authority to dismiss claims for money damages and "[a]t most, the court [may] delay resolution of the claims until the state court has had an opportunity to address any matters otherwise calling for *Burford* abstention"). In this case, Plaintiff primarily seeks monetary damages, and therefore, in accordance with our Circuit's precedent, we decline to dismiss Plaintiff's action based on *Burford* abstention.[7]

### B. *Colorado River* Abstention

Plaintiff also argues that the district court erred in abstaining under *Colorado River*. In *Colorado River*, the Supreme Court held that abstention may apply only under "exceptional" circumstances and that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably

---

[7]Notably, Defendants also concede in their brief that a court may not abstain under *Burford* or *Colorado River* on a claim for money damages. (Defs' Br. 24.)

more limited than circumstances appropriate for [other theories of] abstention." *Colorado River*, 424 U.S. at 818.

We consider a number of factors to determine whether abstention is appropriate under *Colorado River*, including:

> (1) whether the state court or the federal court has assumed jurisdiction over the res or property; (2) which forum is more convenient to the parties; (3) whether abstention would avoid piecemeal litigation; (4) which court obtained jurisdiction first; and (5) whether federal law or state law provides the basis for the decision on the merits.

*United States v. Commonwealth of Kentucky*, 252 F.3d 816, 827 (6th Cir. 2001) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15–16 (1983)).

The district court did not apply all of the factors in its decision to abstain. Instead, the district court found that the present case satisfied the exceptional circumstances and limited its explanation to speculation that the present matter could lead to piecemeal litigation due to the concurrent state and federal court jurisdiction over the matter. However, under *Colorado River*, "[n]o one factor is necessarily determinative," and the court must undertake "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighed in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 15. The first two factors—assumption of jurisdiction over property and convenience of the forum—are inapplicable. In addition, the record indicates that the federal court assumed jurisdiction first. This case does not yet involve a state court action. Only after a decision has been made by a Step 3 official may Plaintiff appeal to the circuit court for Ingham County. Regardless of whether Plaintiff appeals the grievance to the state court, we conclude that federal law provides the basis for a merits decision on Plaintiff's constitutional claims.

Finally, the present case would not lead to piecemeal litigation. Although the two actions arise out of the same basic facts, Plaintiff raises separate legal challenges and seeks different relief for his grievance with the MCSC and his suit in federal court. Plaintiff's August 7, 2008 grievance alleged that his discharge violated state civil service rules. Plaintiff's federal action, filed on the same day as his grievance, also stems from Defendants' decision to terminate his employment. However, Plaintiff's federal action involves federal constitutional claims that must be resolved by the federal court regardless of the outcome of Plaintiff's grievance under administrative review. Furthermore, Plaintiff seeks injunctive and monetary relief for his federal case while he seeks reinstatement and back pay or front pay from his termination date to his planned retirement for his MCSC grievance. Because Plaintiff may be awarded different forms of relief and raises separate legal challenges, there is no risk of duplicative, piecemeal litigation and abstention under *Colorado River* is not appropriate.

## II.     Default Judgment

Plaintiff also argues that the district court erred in denying his motion for entry of default judgment. Plaintiff claims that Defendants were required to file an answer within 14 days of this Court's decision but failed to do so. We review a district court's decision to deny Plaintiff's motion for default judgment under an abuse of discretion standard. *O.J. Distrib., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 352 (6th Cir. 2003).

To determine whether a default should be entered, the district court reviewed both Plaintiff's motion for entry of default judgment and Plaintiff's motion for reconsideration of the clerk's denial of entry of default under Rule 55(c) of the Federal Rules of Civil Procedure. Rule 55(c) refers to

setting aside a default or a default judgment and states that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). The district court then applied the three-factor test set forth in *United Coin Meter Co. v. Seaboard Coastline Railroad*, which requires consideration of: (1) "[w]hether the plaintiff will be prejudiced;" (2) "[w]hether the defendant has a meritorious defense;" and (3) "[w]hether culpable conduct of the defendant led to the default." 705 F.2d 839, 845 (6th Cir. 1983) (citation omitted). Based on these factors, the district court denied Plaintiff's motions, finding that Plaintiff was not prejudiced by the delay and Defendants did not engage in culpable conduct.

However, the district court may have committed a procedural error by reviewing Plaintiff's motions under Rule 55(c), because there was not a default entry to set aside. The record indicates that Plaintiff moved for entry of default judgment pursuant to Rule 55(b)(2) on July 14, 2010. *See* Fed. R. Civ. P. 55(b)(2). Defendants did not oppose Plaintiff's motion. On July 15, 2010, the district court clerk reviewed Plaintiff's motion under Rule 55(a) and subsequently entered a written notice denying entry of default. *See* Fed. R. Civ. P. 55(a). Plaintiff next filed a motion with the district court to reconsider the clerk's denial of entry of default. Defendants filed a motion in response opposing Plaintiff's request for reconsideration. The district court then denied both of Plaintiff's motions under Rule 55(c) without ever entering a default.

In addition, it was procedurally improper for Plaintiff to move for entry of default judgment without first obtaining an entry of default from the clerk. *See Heard v. Caruso*, 351 F. App'x 1, 15–16 (6th Cir. 2009) (holding that because Plaintiff "did not first seek entry of a default from the clerk of the court, it was procedurally improper for [Plaintiff] to move for entry of a default

judgment"); *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986) ("entry of default is just the first procedural step on the road to obtaining a default judgment"); *see also* 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2682 ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)).").

Despite these procedural defects, we conclude that the district court did not abuse its discretion in denying Plaintiff's motions. The record does not indicate that Plaintiff faced any prejudicial consequences based on Defendants' delay in filing its answer. As the district court observed, Plaintiff waited well over four months after this Court issued its mandate to file his motion for default entry, and contrary to Plaintiff's position, both sides elected to remain actively involved in the litigation without Defendants providing a timely answer. *See Shepard Claims Serv. Inc.*, 796 F.2d at 194–95.

Therefore, the district court did not abuse its discretion in denying Plaintiff's motion for entry of default judgment.

## CONCLUSION

We conclude that the district court erred in its decision to abstain under both *Burford* and *Colorado River*. We therefore **REVERSE** and **REMAND** to allow the district court to proceed consistent with this opinion. We also **AFFIRM** the district court's order denying Plaintiff's motion for default judgment.