NOT RECOMMENDED FOR PUBLICATION
File Name: 26b0002n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

---

IN RE: CHAVON MARIE LANDINGHAM,

$\qquad$ *Debtor*,

_____

DOUG WOODS,

$\qquad$ *Plaintiff-Appellant*,

*v.*

CHAVON MARIE LANDINGHAM,

$\qquad$ *Defendant-Appellee*.

No. 23-8018

---

Appeal from the United States Bankruptcy Court for the Northern District of Ohio at Cleveland.
Nos. 20-bk-10272; 20-ap-01031—Jessica E. Price Smith, Bankruptcy Judges.

Decided and Filed:  March 17, 2026

Before: BAUKNIGHT, Chief Judge; GREGG, and MASHBURN,
Bankruptcy Appellate Panel Judges.

---

### COUNSEL

**ON BRIEF:**  Jesse M. Knevel, JESSE M. KNEVEL CO. LPA, Parma, Ohio, for Appellee.  Doug Woods, Cleveland, Ohio, pro se.

---

### OPINION

---

JOHN T. GREGG, Bankruptcy Appellate Panel Judge.  Doug Woods, the *pro se* plaintiff-appellant ("Woods"), filed a complaint alleging that debts owed to him by Chavon Marie Landingham, the defendant-appellee (the "Debtor"), were non-dischargeable under section

523(a)(2) and (6) of the Bankruptcy Code.**¹** Woods further claimed that the Debtor should not be granted a discharge of any debts pursuant to section 727(a).

Because the Debtor failed to timely answer or otherwise respond to the complaint, the clerk of the bankruptcy court entered a default. Woods sought, but the bankruptcy court declined to enter, a default judgment. The bankruptcy court subsequently authorized the Debtor to file an otherwise untimely answer that contained counterclaims under sections 547 and 523(d). Thereafter, Woods and the Debtor filed numerous dispositive, procedural, and discovery-related motions, all of which the bankruptcy court decided in due course.

Upon conclusion of Woods's case in chief at trial, the bankruptcy court granted the Debtor's motion for judgment on partial findings as to all of Woods's claims and adjourned the trial on the Debtor's counterclaims. Woods immediately filed a motion for recusal under 28 U.S.C. §§ 144 and 455, which the bankruptcy court summarily denied at the beginning of the trial on the Debtor's counterclaims. Ruling in favor of the Debtor with respect to both of her counterclaims upon conclusion of the adjourned trial, the bankruptcy court entered a final order and issued a separate judgment.

Woods appealed. For the reasons set forth below, we AFFIRM the bankruptcy court's decision to grant the Debtor judgment on partial findings as to Woods's claim under section 523(a)(6). We likewise AFFIRM the bankruptcy court's decisions regarding Woods's motion for entry of a default judgment as well as other dispositive, procedural, and discovery-related motions. However, we VACATE and REMAND to the bankruptcy court for further proceedings as to Woods's claims under sections 523(a)(2) and 727, the Debtor's counterclaims under sections 547 and 523(d), and Woods's motion for recusal under 28 U.S.C. § 455.

---

**¹**The Bankruptcy Code is set forth in 11 U.S.C. §§ 101 *et seq*. Specific sections of the Bankruptcy Code are identified herein as "section ___." The Federal Rules of Civil Procedures are set forth in Fed. R. Civ. P. 1 *et seq*. and are identified herein as "Rule ___." The Federal Rules of Bankruptcy Procedure are set forth in Fed. R. Bankr. P. 1001 *et seq*. and are identified herein as "Bankruptcy Rule __." References to the bankruptcy court's adversary proceeding docket are designated "ECF No. ___." References to the BAP docket are designated as "BAP ECF No. ___."

**ISSUES ON APPEAL**

With one exception, Woods timely filed his notice of appeal under Bankruptcy Rule 8002(a)(1) and identified therein a final order and separate judgment. In his statement filed pursuant to Bankruptcy Rule 8009(a)(1), Woods listed nine issues, some with multiple parts. Upon review of Woods's appeal brief and the arguments developed therein, the Panel considers only the following issues:

1. Whether the Bankruptcy Court erred in finding for the denial of default judgment in favor of Appellant on 08/25/2020 and granting leave for Appellee to Answer despite failing to present excusable neglect.

2. Whether the Bankruptcy Court erred and abused its discretion in finding that Appellant wasn't entitled to be granted multiple motions that were, simultaneously, granted in favor of Appellee (i.e., motion to compel, motion for sanctions, motion for a protective order, motion to supplement the witness list, motion to strike affidavit, motion to dismiss complaint, motion for leave to file, motion to ban testimony).

\* \* \* \* \*

4. Whether the Bankruptcy Court erred in failing to recuse itself based on bias and fixed anticipatory judgment which rendered itself throughout the course of the proceedings and in final judgment.

5. Whether the Bankruptcy Court erred and abused its discretion in dismissing the Complaint and granting Appellee's motion for a directed verdict after Appellant presented considerable evidence, pursuant to § 523 and § 727, that had previously been considered sufficient by the Court.

\* \* \* \* \*

7. Whether the Bankruptcy Court erred and abused its discretion in finding that Appellee was entitled to a return of $778.48 in garnished funds.

8. Whether the Bankruptcy Court erred and abused its discretion in finding that Appellee was entitled to an award of attorney's fees in the amount of $58,520 pursuant to § 523(d) and that Appellant wasn't substantially justified or that there weren't special circumstances that would make said award unjust.

(Stmt. of Issues at 1-2, ECF No. 262.)

Woods additionally identified the following issues in his statement:

3.   Whether the Bankruptcy Court erred in finding that Appellant wasn't entitled to summary judgment.

6.   Whether the Bankruptcy Court erred and abused its discretion at trial by allowing Appellee to present evidence outside the issues of the complaint or counterclaim, which said Court had previously disallowed in similar proceedings, and, therefore, allowed the Court to be hindered and confused and to lose its way.

(*Id.*)  Because Woods failed to sufficiently develop these two issues in his appeal brief, he waived them.  *See, e.g.*, *Kellar v. Yunion, Inc.*, 157 F.4th 855, 882-83 (6th Cir. 2025); *see also* Fed. R. Bankr. P. 8014(a)(8).[2]

Lastly, Woods raised whether the bankruptcy court erred by "failing to supplement the record and to make additional findings" in connection with his post-judgment motion for relief under Bankruptcy Rule 7052 (incorporating Rule 52(b)).[3]  The bankruptcy court concluded that it lacked jurisdiction to consider the motion on the merits because Woods had already filed his notice of appeal.  Although the bankruptcy court's decision was incorrect as a matter of law, Woods never filed a new or amended notice as required.  Fed. R. Bankr. P. 8002(b)(1)-(3); *see Parrish v. United States*, 605 U.S. 376, 390, 145 S. Ct. 1664, 1675 (2025) (citations omitted); *Slep-Tone Ent. Corp. v. Karaoke Kandy Store, Inc.*, 782 F.3d 712, 715-16 (6th Cir. 2015) (citations omitted). Accordingly, the issue is not properly before us.

## JURISDICTION

The Panel has jurisdiction to decide this appeal.  *See* 28 U.S.C. § 158.  The United States District Court for the Northern District of Ohio has authorized appeals to the Panel.  Gen. Order No. 1997-27 (N.D. Ohio July 9, 1997).  Neither party to this appeal elected to have it heard by the district court.  28 U.S.C. § 158(b), (c); Fed. R. Bankr. P. 8005.

---

[2]The majority of Woods's issues related to his "multiple motions" were also waived because they were not developed on appeal.  *See infra* at p. 32.

[3]Woods actually filed two motions to amend or make additional findings, only the second of which we conclude was not properly raised on appeal.  The bankruptcy court's decision regarding Woods's first motion merged into the final judgment.  *See* Fed. R. Bankr. P. 8003(a)(4).  However, because Woods never developed his argument on appeal, the issue is waived.

A bankruptcy court's final order may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). Orders in bankruptcy cases qualify as "final" when they definitively dispose of discrete disputes within the overarching bankruptcy case. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37, 140 S. Ct. 582, 586 (2020). The bankruptcy court's bench opinions and final order regarding Woods's claims under sections 523(a) and 727(a), as well as the Debtor's counterclaims under sections 523(d) and 547, were incorporated into a final judgment that fully disposed of the parties' substantive rights. *See* Fed. R. Bankr. P. 8003(a)(5)(A); *infra* at pp. 9-10.

Woods also raises issues regarding various interlocutory rulings that the bankruptcy court made throughout the adversary proceeding. The Sixth Circuit Court of Appeals has instructed "that an appeal from a final judgment draws into question all prior non-final rulings and orders." *Pittman ex rel. Sykes v. Franklin*, 282 F. App'x 418, 423 (6th Cir. 2008) (quoting *Caudill v. Hollan*, 431 F.3d 900, 904 (6th Cir. 2005)); *see* Fed. R. Bankr. P. 8003(a)(4). The bankruptcy court's interlocutory determinations are now final for purposes of this appeal.

## STANDARD OF REVIEW

Woods's numerous issues on appeal are reviewed under varying standards. "An abuse of discretion is defined as a definite and firm conviction that the [trial court] committed a clear error of judgment." *Mayor of Balt. v. West Virginia* (*In re Eagle-Picher Indus., Inc.*), 285 F.3d 522, 529 (6th Cir. 2002) (citation modified). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs., Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 608 (6th Cir. 2000).

In contrast, an appellate court must affirm the trial court's underlying factual determinations unless they are clearly erroneous. *See, e.g.*, *Hills v. McDermott* (*In re Wicker*), 702 F.3d 874, 877 (6th Cir. 2012). We have previously stated:

> A factual finding "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Kraus Anderson Cap., Inc. v. Bradley* (*In re Bradley*), 507 B.R. 192, 196 (B.A.P. 6th Cir. 2014) (quoting

> *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944 (6th Cir. 2007) (internal quotation mark omitted)).

*Wohleber v. Skurko* (*In re Wohleber*), 596 B.R. 554, 560 (B.A.P. 6th Cir. 2019). The United States Supreme Court has explained that findings of fact "address[] questions of who did what, when or where, how or why." *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 394, 138 S. Ct. 960, 966 (2018) (citation omitted).

> A trial court's legal conclusions, on the other hand, are reviewed *de novo*:

> "Under a de novo standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007). Essentially, the reviewing court decides the issue "as if it had not been heard before." *Mktg. & Creative Sols., Inc. v. Scripps Howard Broad. Co.* (*In re Mktg. & Creative Sols., Inc.*), 338 B.R. 300, 302 (B.A.P. 6th Cir. 2006). "No deference is given to the trial court's conclusions of law." *Id.*

*In re Wohleber*, 596 B.R. at 560. In plain terms, legal conclusions require "courts to expound on the law." *Vill. at Lakeridge*, 583 U.S. at 396.

## BACKGROUND

Prepetition, the Debtor submitted a rental application for certain residential real property in Ohio that was owned by Woods, doing business as "What A Lovely Home." Woods initially declined to lease the property to the Debtor. Seven months later, the Debtor submitted a second application. This time, Woods found the Debtor to be an acceptable tenant. Woods and the Debtor entered into a written lease agreement with a one-year term beginning on February 1, 2018, and ending on January 31, 2019.

After expiration of the lease term, the Debtor continued to reside in the property until she vacated it on or around May 19, 2019. A short time later, Woods filed a "Small Claim Complaint" against the Debtor in Ohio state court alleging breach of contract, "willful and malicious" property damage, and fraud. When the Debtor did not contest the allegations in the complaint, the state court entered a "Certificate of Judgment" against her (without specific findings) for the full amount sought by Woods – $6,000.00, plus interest and costs. With a judgment in hand, Woods began to garnish the Debtor's wages.

On January 16, 2020, the Debtor, acting *pro se*, filed a voluntary petition for relief under chapter 7. Approximately three months later and in the midst of the COVID-19 health pandemic, Woods filed a complaint in which he alleged that the debt owed to him should be deemed non-dischargeable under sections 523(a)(2)(A), (a)(2)(B), (a)(6), and 727(a)(2), (3), (4), (5), (6), and (7). According to Woods, the Debtor damaged the rental property by, among other things, repeatedly hitting the front porch with a baseball bat and pouring either oil or gasoline on the carpet around the time she vacated the property. Woods further alleged that the Debtor made false verbal and written representations (some regarding her financial condition) that induced him to lease the property to her in the first place. Finally, Woods maintained that the Debtor intentionally concealed assets and failed to make certain disclosures on her bankruptcy petition and related documents, thus evidencing her intent to hinder, delay, and defraud creditors.

When no answer or other response to the complaint was filed by the Debtor, the clerk of the bankruptcy court entered a default on May 29, 2020, after which Woods promptly filed a motion for entry of a default judgment under Bankruptcy Rule 7055 (incorporating Rule 55(b)). Less than three months later, the bankruptcy court denied the motion for the reasons stated on the record.[4]

On November 14, 2020, the Debtor, newly represented by legal counsel, requested leave to file an untimely answer and assert counterclaims under section 547 for the avoidance of transfers due to Woods's garnishment of her wages and for the attorney's fees she expected to incur under section 523(d). Nine days later, the bankruptcy court dispensed with the need for a hearing and entered an order granting the Debtor's motion for leave to file a late answer and counterclaims because it was "well taken and should be granted." (Order Granting Am. Mot. for Leave at 2, ECF No. 55.)

Woods did not timely reply to the Debtor's counterclaims as required by Bankruptcy Rule 7012(a).[5] Instead, more than four months after the counterclaims were asserted, Woods filed a

---

[4]Woods (and to a much lesser extent, the Debtor) would go on to file numerous procedural and discovery-related motions.

[5]Woods did not attempt to answer the counterclaims until he sought, but was denied, leave in the middle of the trial.

motion to dismiss under Bankruptcy Rule 7012 (incorporating Rule 12(b)(6)). In his motion, Woods contended, among other things, that the Debtor failed to state a claim under section 547 because the text of the statute gives the power to avoid solely to a trustee. Even though it was not alleged in her counterclaims, the Debtor argued in her written response that section 522(h) provided her with authority to pursue the avoidance of preferential transfers.

On January 21, 2022, the bankruptcy court denied Woods's motion to dismiss in a consolidated order (the "First Order") by stating:

> In her counterclaim, Debtor seeks attorney's fees for this action and a return of funds garnished in the 90 days prepetition. Plaintiff's motion to dismiss is late filed, without leave of Court, is not well premised and is denied. Any award of attorney's fees is a matter to be decided when it is ripe. With respect to Plaintiff's allegation that Debtor does not have standing to pursue the prepetition wage garnishment, Debtor claimed an exemption as to those funds and is entitled to pursue the preference action.

(First Order at 2, ECF No. 156.)

On November 17, 2022, the bankruptcy court commenced a trial regarding all claims and counterclaims. After Woods completed his case in chief regarding his claims under sections 523(a) and 727(a), the Debtor moved for a judgment on partial findings under Bankruptcy Rule 7052 (incorporating Rule 52(c)). In a bench opinion given that same day, the bankruptcy court granted the Debtor's motion on Woods's claims under sections 523(a)(2)(A), 523(a)(6), and 727(a), and adjourned the trial on the Debtor's counterclaims.

On the morning of November 21, 2022, the bankruptcy court was prepared to move forward as scheduled with the adjourned trial regarding the Debtor's counterclaims. Although Woods appeared, he requested further adjournment due to an emergency medical condition he had suffered over the preceding weekend. Relying on Woods's representations, the bankruptcy court adjourned the trial. One day later, Woods filed a second motion to dismiss the Debtor's counterclaims for lack of service as well as a motion requesting that the bankruptcy judge recuse herself. In total, Woods filed seven motions during the week of the trial that had been adjourned to accommodate his medical condition.

On November 28, 2022, the bankruptcy court orally denied Woods's motion for recusal and his motion to dismiss the Debtor's counterclaims.  Upon conclusion of the trial that same day, the bankruptcy court took the counterclaims under advisement.[6]  Approximately one week later, the bankruptcy court gave a bench opinion in which it determined that Woods had received transfers in the aggregate amount of $778.48 that were subject to avoidance under section 547.  The bankruptcy court also concluded that the Debtor was entitled to her costs and attorney's fees pursuant to section 523(d).

On December 22, 2022, Woods filed his first motion to amend or make additional findings under Bankruptcy Rule 7052 (incorporating Rule 52(b)).  Woods contended that the bankruptcy court had improperly calculated the damages related to the Debtor's counterclaim under section 547.  After a hearing on March 23, 2023, regarding the motion to amend or make additional findings and the amount of attorney's fees due to the Debtor under section 523(d), the bankruptcy court took both matters under advisement.

The adversary proceeding was dormant until August 4, 2023, when the bankruptcy court entered a consolidated order (the "Final Order") that "summarize[d] the various hearings and the disposition of pleadings filed and oral motions made" and stated that the decisions therein were "consistent with bench rulings made on November 17, 2022, November 21, 2022, November 28, 2022, December 7, 2022, and the hearing held on March 8, 2023."  (Final Order at 2, ECF No. 247.)  The Final Order further stated:

> All matters were heard at trial.  The Court's bench rulings, denied and disposed of Plaintiff's claims and allowed the Debtor's preference and attorney's fees claims.
>
> * * * * *
>
> For the reasons stated on the record, and as described, in part, below, the directed verdict was granted, the debt owed to Plaintiff was declared discharged and the request to deny the Debtor's general discharge was denied.

---

[6]Woods also filed a second motion for leave to file an answer to the Debtor's counterclaims and his second proposed answer to the Debtor's counterclaims.

(*Id.* at 1-2.)  In addition to denying Woods's motion to amend or make additional findings, the bankruptcy court awarded the Debtor costs in the amount of $178.94 and attorney's fees in the amount of $58,520.00.  That same day, the bankruptcy court entered a separate judgment.[7]

Fourteen days after entry of the Final Order and the judgment, Woods filed his notice of appeal.  Moments later, he filed a second motion to amend or make additional findings under Bankruptcy Rule 7052, which the bankruptcy court denied.  *See supra* at p. 4.  This appeal ensued.[8]

After several extensions, Woods filed a fifty-two page, sometimes single-spaced appeal brief.[9]  The Debtor responded by filing a brief in which she largely relied on the bankruptcy court's decisions.  Woods then filed a reply brief that, for the most part, reiterated the arguments he made in his appeal brief.  With the briefing complete, this matter is ready for a decision.

## DISCUSSION

The issues before the Panel are not overly complex from a legal perspective.  However, the bankruptcy court's docket is difficult to follow, due in part to Woods's numerous and often repetitive requests for relief.  As always, the Panel's decisions are shaped by two fundamental precepts:  (i) examination of the bankruptcy court's findings of fact, conclusions of law, and other reasons given, and (ii) application of the appropriate standard of review on appeal.

### A.     *Claims for Non-Dischargeable Debt – 11 U.S.C. § 523(a)(2)*

Woods first contends that the bankruptcy court erred by entering judgment on partial findings against him with respect to his claims under section 523(a)(2)(A) and (B).  The Panel reviews the bankruptcy court's "findings of fact for clear error and its conclusions of law de novo."

---

[7]Even though the judgment does not mention Woods's claims, it does refer to the dates upon which decisions were made throughout the adversary proceeding.  Consistent with the Final Order, the Panel construes the judgment as implicitly addressing all of Woods's claims, notwithstanding the lack of any express reference to them.  Woods presumably interpreted the judgment in the same way, as he never requested entry of a separate judgment under Bankruptcy Rule 7058 (incorporating Rule 58(d)).

[8]This appeal has been significantly delayed by Woods's repeated requests for extensions, among other things.

[9]Woods's appeal brief refers to disparaging comments regarding the bankruptcy judge that were allegedly made by counsel for the Debtor and a third party.  The Panel has no idea who first made these comments or if they were even made at all.  Regardless, any such statements are completely unfounded, have no place before this Panel, and are condemned.

*Pazdzierz v. First Am. Title Ins. Co.* (*In re Pazdzierz*), 718 F.3d 582, 586 (6th Cir. 2013) (citation omitted) (applying standard to claims under section 523(a)(2)).

### 1.    *False Representations – 11 U.S.C. § 523(a)(2)(A)*

Section 523(a) sets forth an exhaustive list of debts that are excepted from discharge, including a debt –

> (2)    for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> > (A)    false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).  A creditor must demonstrate the following elements to prevail on a claim for false representations under § 523(a)(2)(A):

> (i)    The debtor obtained money, property, services or credit;
>
> (ii)    Through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
>
> (iii)    The debtor intended to deceive the creditor;
>
> (iv)    The creditor justifiably relied on the false representation; and
>
> (v)    Such reliance was the proximate cause of the loss.

*Rembert v. AT&T Universal Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277, 280-81 (6th Cir. 1998) (citation omitted).  As the creditor, Woods was required to prove each element at trial by a preponderance of evidence.  *In re Pazdzierz*, 718 F.3d at 586 (citation omitted).

The bankruptcy court granted the Debtor's motion for judgment on partial findings.  It concluded that because the Debtor was a month-to-month tenant no longer subject to the lease agreement, Woods could not satisfy, as a matter of law, a prima facie element of a claim based on false representations.  The bankruptcy court explained:

> So an exception for the discharge under 523(a)(2)(A) requires a creditor to prove that the debtor obtained money through a material misrepresentation at the time the debtor knew was false or made with gross recklessness as to its truth, that the debtor intended to deceive the creditor, and that the creditor justifiably relied on the false representation, and that that reliance was then the proximate cause of the loss.

I have heard the statements today and the exhibits that were admitted demonstrate that this Debtor provided two rental applications approximately six months apart, and then was given opportunity to rent this home in January of 2018. The testimony of Creditor, Mr. Woods, was that when she contacted him, he appreciated her perseverance. The Social Security Number is off by one. The Creditor stated that he did a background check both times, and that one came back clean and one did not. That documentation has not been provided.

When I look at the rental applications, when I look at the lease agreement, I am concerned about the terms of this lease that appear like they go beyond what a normal lease would require of a tenant. I am concerned about the way that this process was run. But none of that matters because this lease ran from January of 2018 to February of 2019. And so this contract was done as of February, 2019.

It is still not clear to me what it was that triggered the Creditor's desire to have this tenant move out in May of 2019. But this contract was done. *You were on a month-to-month lease, and at any point after the original termination of the agreement, which you allowed to play out for the year, you had the ability to tell the tenant that she had 30 days to leave. And so there is no underlying agreement upon which to place the allegation of fraud that would have caused you any injury.* So the motion for directed verdict under 523(a)(2)(A) is granted.

(Tr. Nov. 17, 2022 at 144:16-146:4, BAP ECF No. 25 (emphasis added).)

In its Final Order, the bankruptcy court emphasized that Woods never demonstrated justifiable reliance or, relatedly, the proximate cause of his loss because the lease term had expired:

With respect to his claim to have his debt declared nondischargeable pursuant to § 523(a)(2), Plaintiff testified that he did not rent to Debtor the first time she submitted an application because of the negative information received from a background check. He further claimed that Debtor provided an incorrect social security number and different last name on a second rental application submitted, so that no negative information would be returned in the background check. There was no credible evidence presented at trial to support this claim. *Plaintiff also testified that Debtor made misrepresentations on her rental application, and that if she had been truthful, he would not have rented her the home.*

Plaintiff and Debtor entered into a one-year lease that was completed in February of 2019. With the term of the lease completed, Plaintiff had no obligation to allow Debtor to remain as a tenant in the property. But, instead of taking possession of the premises, Plaintiff allowed Debtor to occupy the property in a month-to-month tenancy. *Based on his testimony and allowing the Debtor to remain a tenant in the property after the term of the lease expired, the Court found that Plaintiff failed to*

*establish that his reliance on the rental application was the proximate cause of his alleged damages*.

(Final Order at 2-3, ECF No. 247 (emphasis added).)

On appeal, Woods contends that the bankruptcy court failed to explain its conclusion that the rental property was not "obtained by . . . false representations," based on the evidence presented, including the executed lease agreement. Section 523(a)(2)(A) requires a court to consider how property for which a debtor owes a debt was actually obtained. *See, e.g.*, *Bartenwerfer v. Buckley*, 598 U.S. 69, 75-77, 143 S. Ct. 665, 671-73 (2023); *Brady v. McAllister* (*In re Brady*), 101 F.3d 1165, 1172 (6th Cir. 1996). In its bench opinion and the Final Order, the bankruptcy court found that Woods "allowed" the Debtor to remain in the property after expiration of the lease term on a "month-to-month tenancy."[10] As the bankruptcy court saw it, with the lease expired, the Debtor could not have obtained the property through material misrepresentations as a matter of law.

But the bankruptcy court never explained the significance of the lease term's expiration in relation to the Debtor's reliance and/or the proximate cause of Woods's loss, nor did it cite to any authority in support of this conclusion. Moreover, although the bankruptcy court generally referred to the fact that Woods testified (presumably regarding the Debtor's alleged false representations), it never stated in its bench opinion or the Final Order what that testimony was, how it was relevant (if at all) to the bankruptcy court's decision, or whether he was credible.[11]

The Panel remains mindful of the different adjudicative roles of a trial court and appellate court. A trial court makes findings of fact and states its conclusions of law based on the evidence presented and arguments made, while the appellate court merely reviews the decision of the trial court by applying the appropriate standard of review. Fed. R. Bankr. P. 7052 (incorporating Fed. R. Civ. P. 52(a)(1)); *Taglieri v. Monasky*, 907 F.3d 404, 408-09 (6th Cir. 2018). Because the

---

[10]It is unclear from the bankruptcy court's bench opinion and the Final Order if the Debtor was a tenant at sufferance or if the parties' rights were governed by a separate written document or even a verbal understanding.

[11]The bankruptcy court expressly addressed Woods's credibility in its bench opinion given on December 7, 2022. In connection with its decision on the Debtor's claim under section 523(d), the court found that Woods's testimony related to his claim under section 523(a)(6) lacked credibility. *See infra* at pp. 16-17.

bankruptcy court failed to state with specificity its factual findings as to the evidence at trial and did not explain its legal conclusions, we are unable to meaningfully review the trial court's decision and remand for further proceedings on Woods's claim under section 523(a)(2)(A).

**2.      *Use of a Statement in Writing – 11 U.S.C. § 523(a)(2)(B)***

Next, Woods argues that the bankruptcy court failed to make any findings of fact or state conclusions of law regarding his claim under section 523(a)(2)(B), which he alleged in his complaint at paragraphs 17 and 20.  During the trial, Woods continued to pursue the claim by making references to the Debtor's financial condition, including representations she made in the second lease application.  When the bankruptcy court entered the Final Order, it stated that *all* of Woods's claims were denied and that the debt the Debtor owed to Woods was discharged.

Section 523(a)(2)(B) is separate and distinct from section 523(a)(2)(A).  *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 723-24, 723 n.6, 138 S. Ct. 1752, 1763-64 (2018); *see also* 4 *Collier on Bankruptcy* ¶ 523.08[1] (16th ed. 2026) ("Paragraphs (A) and (B) of section 523(a)(2) are mutually exclusive.").  It provides, in pertinent part, that the discharge does not apply to:

> (2)      any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
>> (B)      use of a statement in writing –
>>
>>> (i)      that is materially false;
>>>
>>> (ii)     respecting the debtor's or an insider's financial condition;
>>>
>>> (iii)    on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>>
>>> (iv)     the debtor cause to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2)(B).

For reasons unknown, the bankruptcy court did not in any way explain its decision to grant the Debtor's motion for entry of a judgment on partial findings as to Woods's claim under section 523(a)(2)(B).  *See* Fed. R. Bankr. P. 7052 (incorporating Fed. R. Civ. P. 52(a)).  We therefore remand to the bankruptcy court with instructions to make findings of fact and state its conclusions of law as to Woods's claim under section 523(a)(2)(B).

**B.** ***Claim for Non-Dischargeable Debt – 11 U.S.C. § 523(a)(6)***

Woods also challenges on appeal the bankruptcy court's decision to enter judgment against him under section 523(a)(6). With respect to a claim under section 523(a)(6), a trial court's factual findings are reviewed for clear error, while its legal conclusions are reviewed *de novo*. *Steir v. Best* (*In re Best*), 109 F. App'x 1, 4 (6th Cir. 2004) (citations omitted).

Section 523 excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In order to satisfy the prima facie elements of a claim under section 523(a)(6), a creditor must demonstrate by a preponderance of the evidence that (i) the debtor owes a debt to the creditor, (ii) the creditor suffered an injury personally or to his or her property, (iii) the injury was caused by the debtor's conduct, (iv) the debtor's conduct was willful, and (v) the debtor's conduct was malicious. *In re Best*, 109 F. App'x at 5-6; *see Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S. Ct. 974, 977 (1998) (defining willful and malicious); *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661 (1991) (preponderance of the evidence).

At the conclusion of Woods's case in chief, the bankruptcy court determined that Woods had not satisfied his burden of proof under section 523(a)(6). After stating that "this is not the first case of this kind with this Creditor that has been heard before this court," the bankruptcy court explained the tension it generally perceives between debtors and creditors, noting that "as a court of equity," it balances those competing interests. (Tr. Nov. 17, 2022 at 146:6-8, 20, BAP ECF No. 25.) The bankruptcy court stated:

> In order to raise to the level of this needs to be paid for, there does need to be a demonstration of willful and malicious. And I'm looking at the information that has been presented. I'm looking at . . . the documentation for the work that was done, and not getting into what was raised by the Debtor, but did not get admitted into evidence because the Debtor's case in chief did not go forward, what I have here is the statement on behalf of the Creditor about what you believe to have happened. You brought in two witnesses that did not identify the Debtor as the person who would have caused any type of harm to the house, although they said that someone caused the harm.
>
> The problem with that is, is that the time period for one witness was between three and four years ago, and for one was approximately 2019. But this property has been rented by women within the last five years, both of whom have alleged to have

caused damage. And it's not clear what women those two witnesses were talking about. So it could have been this Debtor, it could have been someone else. And this Debtor was not called to testify to address any of those things so that that could be clarified.

The next thing is . . . Exhibit 3A, the damage exhibit provided by the Creditor. And as I'm looking through the nature of the damages, and one of the - - there are two things that I think that Creditor has alleged seem to be kind of the most egregious things that occurred. One is the damage to the porch and the door. If I were to even, just for the sake of argument, accept that the first witness saw this Debtor doing damage to the porch, that repair was $41.87, not $6,000.

If I were to look at the second witness and presume that it was this Debtor that they saw and that it was oil that they saw this Debtor walking around with, because they didn't see anything in the house. . . With respect to the floor, there were five tiles that needed to be replaced. With respect to the carpet, the carpet was cleaned, but there's no reference to any oil. There is reference to dog urine. And then there is a reference to cleaning and sealing the . . . driveway.

But the type of damages that are alleged by this Creditor that should have shown up on this receipt, that would have been outside of what would be considered normal wear and tear, they're not here. And when I inquired about that and the information, Mr. Woods, you did clarify that . . . contractors are more general, and so you go through and make sure that they're putting the information on there. And so the damages that you allege for there are not on here.

And for that reason, I find that there has not been a demonstration of willful and malicious injury. And so the claim under 523(a)(6) is also denied.

(*Id.* at 147:15-149:23.)

The bankruptcy court was not done. As part of its bench opinion given on December 7, 2022, that primarily addressed the Debtor's counterclaims, the bankruptcy court returned to Woods's claim under section 523(a)(6):

So I'm going to go a little bit further to explain why I find that not only was the Creditor not entitled to judgment, but the claims as brought were not - - there was no basis for the claims as they were brought, and they were not substantially justified.

So the Creditor presented three witnesses with respect to the claim for willful and malicious intent. If I were to review what was presented by those witnesses, as well as the statements of the Creditor, as well as all of the documentation that was presented, the only proposed evidence that this Debtor committed willful and malicious acts that resulted in damages were the statements of the Creditor. And I don't find the Creditor's statements credible based upon his demeanor, his presentation, and his behavior throughout the prosecution of this case.

> There are issues with respect to statements made by the Creditor and whether or not they were truthful, which leads me again to question his credibility. But the biggest issue is the documentation that the Creditor provided with respect to damages to the property do not demonstrate willful or malicious damages. They demonstrate damages that would have occurred in the ordinary use of it, and nothing presented in the evidence provided by the Creditor rises to the level of willful or malicious intent.

(Tr. Dec. 7, 2022 at 5:8-6:10, BAP ECF No. 25.)

On August 4, 2023, the bankruptcy court entered its Final Order, which incorporated its two bench opinions that discussed Woods's claim under section 523(a)(6) and stated:

> Plaintiff also failed to establish by a preponderance of the evidence that Debtor willfully and maliciously damaged the rental property as required by § 523(a)(6). [Debtor] called two witnesses to testify about the alleged damages to the property. Lewis Kobal testified that he saw a woman hit the porch with a baseball bat. Robert Crawford testified that he saw a woman go into the house with a can of some kind. He did not know what was in the can. Neither witness identified Debtor as the woman they saw at the property. The Debtor was not called to testify during Plaintiff's case in chief.
>
> Plaintiff testified that Debtor poured a can of oil in the house. He also submitted various pictures he claimed show damage to the home. The pictures, which included images like the front yard in need of mowing and trash by the trash can, did not support the claim of willful and malicious damage to the property. Plaintiff also submitted receipts as proof of the repairs he made to the property. Among other things, the receipts show cost of repairs to the porch and door for $41.87. There is also a reference to dog urine and related repairs consisting of replacing five tiles and cleaning the carpet. There is no reference to repairs or replacements needed because of oil spilled in the house. The damages alleged by Plaintiff are not consistent with the receipts he presented at trial. Accordingly, there was no evidence to support the claim of willful and malicious damage.

(Final Order at 3, ECF No. 247.)

In his appeal brief, Woods advances five arguments as to why the bankruptcy court should not have granted judgment on partial findings regarding the Debtor's claim under section 523(a)(6). *First*, Woods argues that the bankruptcy court erred by not deeming his requests for admission under Bankruptcy Rule 7036 (incorporating Rule 36(a)(3)) as admitted in their entirety when the Debtor failed to timely answer them. If they had been admitted, Woods insists, he would have successfully proven his claim under section 523(a)(6)). Woods is mistaken. A trial court has

discretion to permit the "withdrawal" of admissions previously unanswered. *See, e.g.*, *Reo v. Lindstedt*, Nos. 21-3633/3661/4191/22-3025, 2022 WL 17492099, at \*1 (6th Cir. Dec. 8, 2022). Moreover, the Debtor *did* answer Woods's requests for admission after the bankruptcy court granted the Debtor's request for an extension of time, which is wholly consistent with Bankruptcy Rule 7036. *See, e.g.*, *United States v. Petroff-Kline*, 557 F.3d 285, 293-94 (6th Cir. 2009) (citations omitted).

*Second*, Woods contends that the bankruptcy court should have applied the doctrine of collateral estoppel and/or the *Rooker-Feldman* doctrine based on the judgment entered by the state court. We disagree. The record on appeal contains no evidence of the state court's factual findings.[12] Therefore, under a *de novo* standard of review, we cannot say that the bankruptcy court erred when it determined that collateral estoppel did not apply. *See, e.g.*, *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 461 (6th Cir. 1999). And the *Rooker-Feldman* doctrine, which is also subject to a *de novo* standard of review, does not help Woods. Bankruptcy courts have exclusive jurisdiction with respect to claims under section 523(a)(6). Accordingly, the *Rooker-Feldman* doctrine did not apply to Woods's claim. *See, e.g.*, *WLP Cap., Inc. v. Tolliver* (*In re Tolliver*), No. 20-8021, 2021 WL 6061853, at \*10 (B.A.P. 6th Cir. Dec. 20, 2021).

*Third*, Woods maintains that, as a procedural matter, the bankruptcy court should not have entered judgment based on partial findings. Fed. R. Bankr. P. 7052 (incorporating Fed. R. Civ. P. 52(c)). According to Woods, by doing so, the bankruptcy court essentially excused the Debtor from testifying to Woods's detriment. Woods is incorrect. He had the burden at trial to prove *all* of the requisite elements of a claim under section 523(a)(6) – the Debtor did not have the burden to disprove *any* of them. *Grogan*, 498 U.S. at 291. So, if Woods had wanted the Debtor to testify, he should have called her as a witness during his case in chief. We therefore conclude that,

---

**12**In one of its consolidated orders, the bankruptcy court noted that a different state court order of some sort found that the damages to the rental property *were not* attributable to normal wear and tear. However, it does not appear as though the state court order was ever admitted into evidence at trial. A review of the trial transcript reveals numerous "inaudible" remarks from Woods when documents were being admitted into evidence, but it is not clear if one of the documents admitted was the state court order. Woods did not request relief from either the bankruptcy court or the Panel to address the inaudible portions of the transcript. *See* Fed. R. Bankr. P. 8009(e), (g).

procedurally, the bankruptcy court did not abuse its discretion when it granted the Debtor's motion for judgment on partial findings.

*Fourth*, Woods argues that the bankruptcy court "failed to link the conclusory statements made with objective evidence in the record . . . or explain, or direct a reviewing court to, what was relied on when making (her) [*sic*] determination." (Br. of Appellant at 22, BAP ECF No. 44 (citation omitted).) If the burden of proof had been on the Debtor, Woods would have a point. Although the bankruptcy court made findings of fact on three separate occasions, it is true that it never comprehensively applied those facts to the prima facie elements for a claim under section 523(a)(6). However, the bankruptcy court did not need to be more thorough than it was. *See* Fed. R. Bankr. P. 7052 (incorporating Fed. R. Civ. P. 52(c)); *see also Frontier Energy, LLC, v. Aurora Energy, Ltd.* (*In re Aurora Oil & Gas Corp.*), 444 B.R. 369, 371 (Bankr. W.D. Mich. 2011) (noting that judgment on partial findings is useful where the plaintiff fails to demonstrate the elements of a claim in either fact or law). That's because, again, Woods needed to prove each element of a claim under section 523(a)(6), meaning that if Woods did not prove even one element, his claim would fail.

*Fifth*, Woods takes issue with the bankruptcy court's decision to discount, if not entirely disregard, his testimony as part of his case in chief. Woods has a point. He testified that he personally saw the Debtor damage the front porch and enter the house with a can of oil or gasoline, among other things. The bankruptcy court concluded that Woods's testimony was not credible due to his "demeanor," "presentation," and "behavior throughout the prosecution of this entire case." However, the bankruptcy court did not, for example, identify any specific inconsistencies, contradictions, instances of impeachment, or even equivocations. *See King v. Zamiara*, 680 F.3d 686, 701 (6th Cir. 2012); *cf. Williams v. United States*, 597 F. App'x 647, 648-49 (2d Cir. 2015) (explaining reasons to disregard witness testimony, such as contradictory evidence and inconsistent statements); *see generally Michael v. Savinell* (*In re Savinell*), No. 23-02036, 2025 WL 2621905, at *5-6 (Bankr. S.D. Ohio Sept. 9, 2025) (analyzing the credibility of witnesses based on their statements, ability to recall detail, and narrative consistency).

The Panel recognizes that it must "give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Bankr. P. 7052 (incorporating Fed. R. Civ. P. 52(a)(6)). Yet a trial court cannot "insulate [its] findings from review by denominating them credibility determinations, because whether a witness is believable depends on more than just her demeanor on the stand." *King*, 680 F.3d at 701 (citation omitted). Without more detail in the bankruptcy court's bench opinions and the Final Order, it is extremely difficult for the Panel to review the bankruptcy court's decision to completely disregard Woods's testimony.

With that said, we ultimately cannot say that the bankruptcy court committed an error when it determined that Woods failed to satisfy his burden of proof. Woods asked the bankruptcy court to determine the non-dischargeable nature of a debt related to an alleged willful and malicious injury to his property. Identifying Woods's failure to prove willful and malicious injury as "the biggest issue," the bankruptcy court found that any damage to the rental property was caused by normal wear and tear, not the swinging of a baseball bat, the pouring of a petroleum-based product on the carpet, or anything else. *See, e.g.*, *Taglieri*, 907 F.3d at 408 ("[W]e must let [trial] courts do what [trial] courts do best – make factual findings – and steel ourselves with respect to what they find."). To make this finding, the bankruptcy court relied on photographs and a typed contractor's invoice containing line-items for all repairs to the rental property. The bankruptcy court sufficiently explained that Woods's invoice from the contractor did not support the damages he was alleging in connection with his claim under section 523(a)(6).[13]

As the trier of fact, the bankruptcy court did exactly what Woods requested. It looked at the evidence and concluded that any injury to the property was from normal wear and tear, not conduct causing a willful and malicious injury. We are therefore not left with a definite and firm conviction that the bankruptcy court erred. Applying a clearly erroneous standard of review, we affirm.

---

[13]Woods's own testimony was that he made sure the contractor's invoice "had it in detail." (Tr. Nov. 17, 2022 at 121:1, BAP ECF No. 25.) Woods testified that there were two invoices, only one of which contained Woods's handwritten notes. He further explained that the invoice with his notes not only contained more detail, but also excluded items damaged as a result of normal wear and tear. However, the handwritten invoice does not appear to have been admitted into evidence at trial.

## C.  *Claims for Denial of Discharge – 11 U.S.C. § 727(a)*

Woods also appeals the bankruptcy court's decision to grant judgment to the Debtor on partial findings with respect to Woods's claims under section 727(a).  Pointing to numerous exhibits admitted into evidence at trial, Woods maintains that the bankruptcy court erred when it failed to find, "[a]t the very least, [the Debtor] engaged in conduct contrary to Section 727(a)(2)-(5)."[14]  A trial court's findings of fact on claims under section 727(a) are reviewed for clear error, while its legal conclusions are reviewed *de novo*.  *Keeney v. Smith* (*In re Keeney*), 227 F.3d 679, 683 (6th Cir. 2000).

Although Woods's arguments regarding section 727(a) are somewhat disjointed, they are sufficiently developed.  *See Smith v. P.A.M. Transp., Inc.*, 154 F.4th 375, 389 (6th Cir. 2025).  We focus, merely by way of example, on two particular subsections of the statute.  Section 727(a)(2) provides that a debtor should be granted a discharge unless:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> > (A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A); *see Colebrook v. Thompson* (*In re Thompson*), 668 B.R. 156, 187 (B.A.P. 6th Cir. 2025) (citation omitted).  And section 727(a)(4) proscribes the entry of the discharge where a debtor, in connection with a case, makes a false oath or account, including on his schedules.  11 U.S.C. § 727(a)(4); *Gandy v. Schuchardt* (*In re Gandy*), 645 F. App'x 348, 352 (6th Cir. 2016).

In its bench opinion, the bankruptcy court addressed all of Woods's claims under section 727(a)(2)-(7) by simply stating:

> With respect to the claim under 727(a), I find that the Plaintiff has not provided sufficient evidence in order to sustain the case.  And so the motion for directed

---

[14]Woods abandoned on appeal his claims under section 727(a)(6)-(7).

verdict for the claims under 727 is granted, and that claim for revocation of the discharge is denied.

(Tr. Nov. 17, 2022 at 140:16-21, BAP ECF No. 25.)

Woods's arguments in his appeal brief are persuasive. He emphasizes that during the trial, he introduced, and the bankruptcy court admitted into evidence, numerous documents that demonstrate the Debtor intended to conceal certain property. For example, Woods points to a photograph of the Debtor with thousands of dollars denominated in $100 bills, apparently none of which the Debtor had in her possession, custody, or control when she commenced her bankruptcy case. Woods also introduced evidence that the Debtor failed to disclose certain bank accounts in her schedules that she apparently closed shortly before she filed for bankruptcy, a fact to which the Debtor stipulated shortly before the trial began.

Because the bankruptcy court did not make *any* findings of fact with respect to Woods's claims under section 727(a)(2)-(5), we have no means by which to apply the clearly erroneous standard of review. *Ballinger v. Smith* (*In re Smith*), No. 20-8015, 2021 WL 212361, at *2 (B.A.P. 6th Cir. Jan. 21, 2021) ("It is beyond this Panel's calling to make factual findings and weigh [them] in the first instance."); *see also Taglieri*, 907 F.3d at 408-09. Nor, for that matter, are we able to apply a *de novo* standard of review to the bankruptcy court's legal conclusions, of which there are essentially none. The bankruptcy court may have had its reasons for entering judgment in favor of the Debtor, but we are unable to discern them. *See Trinity High Sch., Inc. v. Sanderfer* (*In re Sanderfer*), No. 23-8023, 2024 WL 2687005, at *6 (B.A.P. 6th Cir. May 24, 2024). We therefore remand to the bankruptcy court with instructions to make findings of fact and state conclusions of law regarding Woods's claims under section 727(a)(2)-(5).

**D.       *Counterclaim for Preferential Transfers - 11 U.S.C. § 547***

Woods next contends that the bankruptcy court erred when it entered judgment in favor of the Debtor on her counterclaim for the avoidance of alleged preferential transfers.[15] Whether a

---

[15]In his appeal brief, Woods did not make any mention of the Debtor's standing or statutory authority to bring a claim under section 547, something he raised in his untimely motion to dismiss the Debtor's counterclaims. Although the Debtor addressed this issue in her appeal brief and Woods attempted to expand on it in his reply brief, Woods is nonetheless deemed to have waived the issue on appeal. *See, e.g.*, *Citizens Coal Council v. United States*

transfer is avoidable under section 547 is a conclusion of law reviewed *de novo*, with findings of fact reviewed under the clearly erroneous standard. *Chase Manhattan Mortg. Corp. v. Shapiro* (*In re Lee*), 530 F.3d 458, 463 (6th Cir. 2008).

Section 547(b) provides that a trustee may avoid a transfer of an interest of the debtor in property if, among other things, the debtor was insolvent at the time of each transfer and such transfer enabled the creditor to receive more than it otherwise would have received in a hypothetical chapter 7 case. 11 U.S.C. § 547(b)(3), (5); *see, e.g.*, *In re Lee*, 530 F.3d at 463-64. The trustee has the burden of proving each element under section 547(b) by a preponderance of the evidence. 11 U.S.C. § 547(g); *see, e.g.*, *Williams v. McNabb* (*In re McNabb*), 567 B.R. 326, 335 (Bankr. W.D. Tenn. 2017) (citation omitted).

> Ruling in favor of the Debtor after trial, the bankruptcy court stated:
>
> So with respect to the preference, under section 547(b) a Trustee may avoid a transfer of interest in property of the Debtor to or for the benefit of Creditor for or on account of antecedent debt owed by the Debtor before such transfer was made while the Debtor was insolvent, or made within 90 days before the date of filing the petition.
>
> There is no dispute here that this Debtor was subject to a collection by Mr. Woods for a state court judgment with respect to a residence where she was living. There is an issue, however, with respect to what, if any, portion of that amount was returned to the Debtor prior to the filing.
>
> Having reviewed the evidence and the testimony that has been presented, I do find that based upon the Debtor's schedules and pleadings, as amended . . . based upon the testimony as presented, that the Debtor was insolvent in the 90 days prior to the filing, that funds received by Mr. Woods would be subject to be returned as a preference. And there is no defense to the amount that has been requested, with the exception of $11.17, which was presented as a refund, made payable by the . . . Municipal Court to the Debtor.

---

*EPA*, 447 F.3d 879, 905 (6th Cir. 2006) (citations omitted) ("The general rule of appellate procedure is that issues not presented in an appellant's initial merits brief are waived."). Woods did not argue in his reply brief (or seek leave to belatedly argue) that an exception to this general rule applies. *See id.*

So with that, I am awarding the amount of $778.48 to the Debtor, as a preference paid to Mr. Woods, prior to - - within the preference period prior to the filing that does not have any valid defense, and so that amount is ordered to be paid.

(Tr. Dec. 7, 2022 at 3:5-4:9, BAP ECF No. 25.)

In its Final Order, the bankruptcy court summarized its bench opinion:

In her case in chief, Debtor alleged that she was entitled to recover funds that were preference payments made to the Plaintiff. She established that Plaintiff received $789.65 in garnished funds during the 90 days immediately preceding the filing of her bankruptcy petition. To counter, Plaintiff provided a copy of a check issued by the state court returning $11.17 to the Debtor. He also alleged that additional funds were returned but there was no documentation to support that claim.

* * * * *

With respect to the preference claim, the Court found that the Debtor demonstrated each required element of § 547. There was no dispute that Plaintiff garnished Debtor's wages in the 90 days prepetition. The only issue was what portion, if any, was returned to the Debtor. Plaintiff received credit for the $11.17 refunded to the Debtor. Accordingly, the Court found that the Debtor was entitled to a return of $778.48 in garnished funds.

(Final Order at 5, 6, ECF No. 247.)

Woods raises three arguments regarding the alleged preferential transfers that the Debtor made. *First*, he argues that the bankruptcy court erred because it failed to consider the evidence he introduced regarding the Debtor's alleged insolvency and, instead, concluded without explanation that the Debtor was insolvent. Although the Debtor was entitled to a presumption of insolvency under section 547(f), Woods attempted to rebut it by relying on photographs of the Debtor allegedly in possession, custody, and/or control of significant cash prior to the petition date, previously undisclosed bank accounts, and income generated through her business.

In its bench opinion and the Final Order, the bankruptcy court never addressed the Debtor's insolvency in any detail. Instead, the bankruptcy court made a passing reference to it without stating whether Woods had successfully rebutted the presumption under section 547(f), after which the Debtor would have been required to demonstrate her insolvency by a preponderance of the evidence. *See* 11 U.S.C. § 547(b)(3), (f). Applying the clearly erroneous standard of review to the

bankruptcy court's factual findings and a *de novo* standard of review to its legal conclusions, we remand to the bankruptcy court with instructions to consider section 547(b)(3) and (f).

*Second*, Woods argues that the bankruptcy court erred by failing to make findings of fact and state its conclusions of law with respect to section 547(b)(5). We again agree with Woods. Section 547(b)(5) requires a trustee to prove that a creditor received more than he or she otherwise would have received in a hypothetical chapter 7. The bankruptcy court's bench opinion and the Final Order are both silent regarding section 547(b)(5).[16] We therefore remand to the bankruptcy court with instructions to make findings of fact and state its conclusions of law as to section 547(b)(5).

*Third*, Woods argues that the bankruptcy court failed to properly calculate the Debtor's damages because Woods had allegedly returned some of the transfers. Woods's arguments in his appeal brief are hard to follow and inconsistent with the evidentiary record from the bankruptcy court designated for use on appeal. *See Nat'l Credit Union Admin. Bd. v. Zovko*, 728 F. App'x 567, 568 (6th Cir. 2018). Applying a clearly erroneous standard of review, the Panel affirms the bankruptcy court's determination regarding the amount of the transfers the Debtor made.

## E. Counterclaim for Attorney's Fees – 11 U.S.C. § 523(d)

Woods also contests the bankruptcy court's determination that he is liable to the Debtor for costs and attorney's fees under section 523(d). According to Woods, the bankruptcy court again failed to make findings of fact and state conclusions of law when it awarded the Debtor the aggregate amount of $58,698.94. We review the bankruptcy court's decision by applying a clearly erroneous standard to its factual findings and a *de novo* standard to its legal conclusions. *See, e.g.*,

---

[16]The Debtor's bankruptcy case has at all times proceeded under chapter 7. Nonetheless, it was the Debtor's burden to satisfy section 547(b)(5), something that needs to be addressed by the bankruptcy court, not the Panel. *See, e.g.*, *Sanderson Farms, Inc. v. Gasbarro*, 299 F. App'x 499, 507 (6th Cir. 2008) (stating that an appellate court "lacks the power . . . to make findings of fact").

*Cannon v. Southeast Fin. Credit Union*, No. 3:15-cv-29, 2015 WL 3607299, at *5 (M.D. Tenn. June 8, 2015) (applying the standard to a claim under section 523(d)).

Section 523(d), a fee shifting statute that largely mirrors the Equal Access to Justice Act, provides that:

> If a creditor requests a determination of dischargeability of a consumer debt under section (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d); *see* 28 U.S.C. § 2412(d)(1)(A). When Congress enacted section 523(d), it expressed concern that "creditors were using the threat of litigation to induce consumer debtors to settle for reduced sums, even though the debtors were in many cases entitled to discharge." *Martin v. Bank of Germantown* (*In re Martin*), 761 F.2d 1163, 1167-68 (6th Cir. 1985) (citing H.R. Rep. No. 95-595, at 131 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6092).

To prevail on a claim under section 523(d), a debtor must demonstrate by a preponderance of the evidence that (i) a creditor brought an action to determine dischargeability of a debt under section 523(a)(2), (ii) the debt is a consumer debt, and (iii) the debt was discharged. *See, e.g.*, *Swartz v. Strausbaugh* (*In re Strausbaugh*), 376 B.R. 631, 636 (Bankr. S.D. Ohio 2007). Upon satisfaction of these elements, the burden shifts to the creditor to prove that its claim under section 523(a)(2) was substantially justified or that there are special circumstances making any award unjust. *See, e.g.*, *id*.

It is important to note that section 523(d) does not create a "presumption that the creditor was not substantially justified simply because it lost." *Heritage Pac. Fin., LLC v. Machuca* (*In re Machuca*), 483 B.R. 726, 735 (B.A.P. 9th Cir. 2012) (citations omitted) (examining legislative history). Moreover, a bankruptcy court has the discretion to deny an unjust award based on the facts and circumstances in each case. *See Davis v. Melcher* (*In re Melcher*), 322 B.R. 1, 9-10 (Bankr. D.D.C. 2005) (collecting cases).

In its bench opinion, the bankruptcy court first declined to award the Debtor punitive damages, which she seems to have requested for the first time during her opening statement at the trial.**[17]** Continuing, the court stated:

> Next, with respect to the claim for attorney's fees that has been presented, 523(d) provides that if a creditor requests determination of dischargeability of a consumer debt and such debt is discharged, the Court shall grant judgment in favor of the Debtor for the costs of and reason -- of reasonable attorney's fees for the proceeding, if the Court finds that the position of the Creditor was not substantially justified. So that gets us back into the question of the claim that was brought by this Creditor. And the Creditor's claims were dismissed on a directive [sic] verdict because the Creditor had not demonstrated an entitlement to the judgment.

> So I'm going to go a little bit further to explain that why I find that not only was the Creditor not entitled to judgment, but the claims as brought were not -- there was no basis for the claims as they were brought, and they were not substantially justified.

> So the Creditor presented three witnesses with respect to the claim for willful and malicious intent. If I were to review what was presented by those witnesses, as well as the statements of the Creditor, as well as all of the documentation that was presented, the only proposed evidence that this Debtor committed willful and malicious acts that resulted in the damages were the statements of the Creditor. And I don't find the Creditor's statements credible based upon his demeanor, his presentation, and his behavior throughout the prosecution of this case.

> There are issues with respect to statements made by the Creditor and whether or not they were truthful, which leads me again to question his credibility. But the biggest issue is the documentation that the Creditor provided with respect to the damages to the property do not demonstrate willful or malicious damages. They demonstrate damages that would have occurred in the ordinary use of it, and nothing presented in the evidence provided by the Creditor rises to the level of willful or malicious intent.

> And because there wasn't evidence even presented by the Creditor on the first instance that supported the claims, I find that this was a frivolous action and, therefore, the Debtor is entitled to attorney's fees.

(Tr. Dec. 7, 2022 at 4:20-6:15, BAP ECF No. 25.)

Woods advances at least three arguments here. He first contends that the bankruptcy court failed to explain why the debt at issue was a consumer debt under section 523(d). The Bankruptcy

---

**[17]**The Debtor did not request punitive damages as part of her counterclaim under section 523(d). Nor, for that matter, did she cite to any authority in support of her verbal request at the beginning of the trial.

Code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). In its bench opinion and the Final Order, the bankruptcy court never concluded that Woods's claim under section 523(a)(2) was for a consumer debt. Rather, the bankruptcy court's decision was silent in this regard.

Woods next argues that the bankruptcy court erred when it awarded the Debtor her attorney's fees for the entire adversary proceeding as opposed to the attorney's fees she incurred in connection with Woods's claim under section 523(a)(2). The bankruptcy court emphasized in its bench opinion that because the debt allegedly owed for an alleged willful and malicious injury under section 523(a)(6) was discharged, the Debtor was entitled to her attorney's fees. However, the plain language of section 523(d) makes it applicable only to debts related to section 523(a)(2), not section 523(a)(6). 11 U.S.C. § 523(d) (expressly applying to "such debt"); *see, e.g.*, *Dr. Gil Ctr. for Back, Neck & Chronic Pain Relief v. Rigney* (*In re Rigney*), No. 4:21-ap-01002-NWW, 2021 WL 4768090, at *2 (Bankr. E.D. Tenn. Oct. 12, 2021).

Finally, Woods argues that the bankruptcy court failed to consider whether he was substantially justified in bringing his claims under section 523(a)(2) and (a)(6) and, even if he was not, whether special circumstances would make an award unjust. At trial, Woods directed the bankruptcy court to the rental applications and other evidence of the Debtor's alleged false representations. Woods maintains that such evidence demonstrated that he was completely justified when he pursued his claim under section 523(a)(2). However, in its bench opinion and the Final Order, the bankruptcy court only summarized its findings related to Woods's claim under section 523(a)(6), not section 523(a)(2), and thereafter concluded that "this was a frivolous action." (Tr. Dec. 7, 2022 at 6:13-14, BAP ECF No. 25.)

We agree with Woods. The bankruptcy court erred by failing to address Woods's defenses. *See In re Hingson*, 954 F.2d 428, 429 (7th Cir. 1992) (stating that appellate review of claim under section 523(d) is "exceedingly difficult" when trial court fails to give reasons for its determination). The bankruptcy court also placed undue emphasis on section 523(a)(6), instead of section 523(a)(2). *See In re Rigney*, 2021 WL 4768090, at *2 (collecting cases). It should have explained in more detail why Woods was not substantially justified in bringing his section 523(a)(2) claims and why, in an exercise of discretion, Woods's alleged special circumstances were

not persuasive.  Accordingly, we remand to the bankruptcy court for further proceedings on the Debtor's claim under section 523(d).[18]

**F.      *Motion for Recusal – 28 U.S.C. § 455***

Woods further contends on appeal that the bankruptcy judge erred by denying his motion for recusal.  Although he raises new factual allegations in his appeal brief, the Panel will consider only those arguments made in the motion for recusal itself.  We review the bankruptcy court's decision for an abuse of discretion.  *Bell v. Johnson*, 404 F.3d 997, 1004 (6th Cir. 2005) (applying standard to 28 U.S.C. § 455).

Recusal of a bankruptcy judge is governed by 28 U.S.C. § 455, which provides, in relevant part, that:

(a)      Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b)      He shall also disqualify himself in the following circumstances:

(1)      Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

28 U.S.C. § 455(a), (b)(1); *see* Fed. R. Bankr. P. 5004(a); *In re Royal Manor Mgmt., Inc.*, 525 B.R. 338, 379-80 (B.A.P. 6th Cir. 2015), *aff'd sub nom.*, *Grossman v. Wehrle* (*In re Royal Manor Mgmt., Inc.*), 652 F. App'x 330 (6th Cir. 2016).[19]  The standard is an objective one.  *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013).

A judge is required to recuse if he or she has a favorable or unfavorable predisposition, including from an extrajudicial source as opposed to conduct or rulings made during the course of

---

[18]Because we are remanding with respect to other issues, we need not decide at this time whether the bankruptcy court's damages calculation under section 523(d) was correct.  We leave this issue for the bankruptcy court to address after considering the other issues on remand.

[19]In his motion, Woods also cited to 28 U.S.C. § 144.  However, the plain meaning of that statute excludes bankruptcy judges as a matter of law.  *See, e.g.*, *In re Byers*, 509 B.R. 577, 581 (Bankr. S.D. Ohio 2014) (citing *Ginger v. Cohn*, 255 F.2d 99, 100 (6th Cir. 1958) (explaining that the statute does not apply to request for recusal of bankruptcy referee)).

the proceeding. *Id.* (citation and quotation omitted). Along these lines, the Supreme Court has explained that:

> [J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . . [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994) (citation omitted).

Woods alleged in his motion for recusal that the bankruptcy judge "displayed partiality," demonstrated "fixed anticipatory judgment," and exhibited "resentment" against him. (Mot. for Recusal at 1, 2, Adv. No. 20-01031 ECF No. 221.) As evidence of such bias, Woods pointed to various rulings made against him by the bankruptcy court throughout the adversary proceeding. He also alleged that the bankruptcy judge suggested, *sua sponte*, that Woods had exhibited a pattern of bringing claims under section 523(a) against his former tenants, including the Debtor.

The bankruptcy judge summarily denied the motion in two sentences, stating:

> So I have reviewed the motion to recuse as well as the response to the motion to recuse. And so that motion is denied.

(Tr. Nov. 28, 2022 at 7:24-8:1, BAP ECF No. 25.) At no point did the bankruptcy judge supplement her decision.

On appeal, Woods reiterates that the bankruptcy court's numerous rulings against him were unfair and that the bankruptcy judge was predisposed to rule against him. He again contends that the bankruptcy judge inappropriately made comments regarding other adversary proceedings in which he was involved.

Woods's arguments, at least on the surface, are not very persuasive.[20] *See Liteky*, 510 U.S. at 555. They appear to be nothing more than complaints about adverse rulings, a far cry from

---

[20]Woods maintains that during a pretrial conference, the bankruptcy judge exhibited hostility toward him "in an approximate 1-minute rant." (Brief of Appellant at 14, BAP ECF No. 44.) Woods did not provide a copy of the

"a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. Indeed, Woods even acknowledged to the bankruptcy judge that he "would still feel comfortable in other cases" assigned to her. (Tr. Nov. 28, 2022 at 6:16-17, BAP ECF No. 25.) Nonetheless, the bankruptcy judge did not give *any* reasons for her decision, including by addressing the assertion that she wrongfully considered Woods's participation in other cases in the context of the Debtor's case. Accordingly, it is impossible for the Panel to review the decision, even under an abuse of discretion standard. We therefore remand to the bankruptcy court for further proceedings on this issue.

### G. *Motion for Entry of Default Judgment Under Bankruptcy Rule 7055*

Woods also argues that the bankruptcy court erred when it declined to grant his motion for default judgment against the Debtor. An order denying a motion for default judgment is reviewed for an abuse of discretion. *See Devlin v. Kalm*, 493 F. App'x 678, 685 (6th Cir. 2012) (citation omitted).

Bankruptcy Rule 7055, incorporating Rule 52(b), requires that "a party apply to the court for a default judgment" unless the "plaintiff's claim is for a sum certain or a sum that can be made certain by computation." It further provides that "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Bankr. P. 7055 (incorporating Fed. R. Civ. P. 55(b)(2)).

We note at the outset that Bankruptcy Rule 7055 uses the permissive term "may" with respect to default judgments. *Id*. Accordingly, a bankruptcy court is not required to grant a motion for default judgment after entry of a default. *See* 10A *Wright & Miller's Federal Practice & Procedure* § 2682 (4th ed. 2025). Instead, courts consider various factors, including whether the movant will be substantially prejudiced by any delay. *See, e.g., AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citations omitted).

---

transcript from the pretrial conference or any other evidence in support of his allegation as he was required to do. *See* Fed. R. Bankr. P. 8009(a)(4), (b)(5).

Woods loosely argues in his appeal brief that the bankruptcy court's delay and eventual denial of his motion for entry of a default judgment caused him prejudice. Woods filed his motion for entry of a default judgment on June 1, 2020. After Woods's initial proposed judgment was defected and corrected, the court scheduled a telephonic hearing on the motion for July 7, 2020. According to the bankruptcy court's docket, the hearing on the motion was "held and adjourned" until August 4, 2020, and then adjourned again until August 18, 2020. The bankruptcy court entered an order on August 20, 2020, denying the motion for the reasons stated on the record.

Woods is correct that the bankruptcy court delayed ruling on his motion for entry of a default judgment. But there is nothing inherently wrong with that, as the text of Bankruptcy Rule 7055 makes clear. And Woods never fully explains why a relatively short delay of less than three months was prejudicial to him. *See also Dassault Systemes, SA v. Childress*, 663 F.3d 832, 842 (6th Cir. 2011) (stating that procedural delay alone is generally not a sufficient basis for establishing prejudice). In the end, Woods was given his day in court with a full opportunity to be heard at trial. Applying the abuse of discretion standard, we affirm.

**H.** *Miscellaneous Motions*

As a final matter, Woods contends that the bankruptcy court erred when it ruled against him on various motions. Although Woods mentions each of these motions in his statement of issues and his appeal brief, he fails to develop his arguments regarding the motions to compel, the motion for sanctions, the motions for a protective order, the motion to supplement the witness list, the motion to strike affidavit, and the motion to ban testimony. *See, e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Instead, Woods's arguments are merely an extension of his list of grievances due to the alleged bias of the bankruptcy judge.

Woods, however, does sufficiently develop arguments regarding (i) his motion for leave to file an untimely answer, (ii) the Debtor's motion to file an untimely answer and assert counterclaims, and (iii) his two motions to dismiss the Debtor's counterclaims. We review the bankruptcy court's decisions under an abuse of discretion standard. *See Mann v. Mohr*, 802 F. App'x 871, 877 (6th Cir. 2020) (citation omitted) (involving a motion for leave to file untimely

answer); *Hodak v. Madison Cap. Mgmt., LLC*, 348 F. App'x 83, 97 (6th Cir. 2009) (citation omitted) (concerning a motion to dismiss counterclaims).

Woods first contends that the bankruptcy court erred when it found his first motion to dismiss the Debtor's counterclaims to be untimely. *See* Fed. R. Bankr. P. 7012(a). According to Woods, he was never served with a copy of the Debtor's answer and counterclaims. Woods similarly contends in his second motion to dismiss that the bankruptcy court lacked personal jurisdiction over him for the same reason.

Woods's arguments are non-starters. Woods separately filed a motion to strike the Debtor's counterclaims shortly after they were filed. He was therefore clearly on notice of them. Moreover, Woods's first motion to dismiss the counterclaims was predicated on the Debtor's alleged failure to state a claim upon which relief can be granted under Rule 12(b)(6), *not* a motion to dismiss for a lack of personal jurisdiction under Rule 12(b)(2). It is hard to understand how Woods could file a motion to dismiss for failure to state a claim if he lacked notice of what the Debtor's counterclaims were. Applying the abuse of discretion standard, we affirm.

Woods also argues that the bankruptcy court erred by granting the Debtor's motion for leave to file an untimely answer and denying his motion to belatedly answer the Debtor's counterclaims. Woods insists that the bankruptcy court had it backward – his motion should have been granted and the Debtor's denied. Woods did not provide a copy of the transcript of the hearing regarding the Debtor's motion, so the Panel is unable to review the bankruptcy court's decision. *See* Fed. R. Bankr. P. 8009(b); *see also Marbly v. City of Southfield*, 9 F. App'x 362, 363-64 (6th Cir. 2001). We therefore affirm.

Woods fares no better with respect to his motion for leave to file a late answer. The bankruptcy court explained in a bench opinion that the motion was untimely, probably because it was filed in the middle of the trial.[21] That was sufficient given the time limit imposed by Bankruptcy Rule 7012(a). We again affirm.

---

[21]The bankruptcy court also addressed Woods's motion for leave to file an otherwise untimely answer in its order dated August 4, 2023 by stating, "The case had been pending for more than two years when Plaintiff filed his

**CONCLUSION**

For the foregoing reasons, we AFFIRM the bankruptcy court's decision to grant the Debtor's motion for judgment on partial findings with respect to Woods's claim under section 523(a)(6) and the bankruptcy court's decisions regarding the parties' numerous motions, including Woods's motion for entry of a default judgment under Bankruptcy Rule 7055. However, we VACATE and REMAND to the bankruptcy court for further proceedings regarding Woods's claims under sections 523(a)(2) and 727(a), the Debtor's counterclaims under sections 523(d) and 547, and Woods's motion for recusal under 28 U.S.C. § 455.

---

motion for leave to answer." (Final Order at 5 n.2, ECF No. 247.) As noted by the bankruptcy court in that same order, "Plaintiff was not prohibited from arguing any defenses at trial." (*Id*. at 5.)